795 A.2d 935

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Edward BRACEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 2, 1999.

Decided Dec. 31, 2001.

Reconsideration Denied April 18, 2002.

270

Billy Nolas, Philadelphia, for appellant, Edward Bracey.

Catherine Marshall, Philadelphia, for appellee, Com.

Robert A. Graci, Harrisburg, for appellee, Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice NIGRO.

Appellant Edward Bracey appeals from the order of the Court of Common Pleas denying his petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541, *et seq.* We affirm.

On February 4, 1991, Philadelphia Police Officer Daniel Boyle attempted to stop a stolen vehicle being driven by Appellant. Appellant refused to stop the vehicle and eventually crashed into a building. Appellant immediately jumped out of the vehicle and onto the hood and roof of Officer Boyle's cruiser while brandishing a 9 mm automatic handgun. He then jumped off the cruiser, pointed his gun at Officer Boyle and instructed the officer not to touch his weapon. When Officer Boyle tried to reverse his car to remove it from the area, Appellant fired no less than eight shots into the cruiser and fled the scene. Officer Boyle died two days later. Physical evidence and several witnesses linked Appellant to the crime and one witness identified Appellant as the shooter.

On February 6, 1991, police responded to a call that a man had entered a residence and set himself on fire. Police entered the residence and found Appellant. Appellant was arrested and taken to the hospital, where he was eventually interviewed after physicians advised police that Appellant was well enough to do so. During the interview, Appellant confessed to shooting Officer Boyle. The police then recovered the murder weapon, which Appellant had disposed of in a sewer.

On March 3, 1992, a jury found Appellant guilty of murder in the first-degree, possessing an instrument of crime, theft by receiving stolen property and criminal trespass. Following a penalty hearing, the jury found two aggravating circumstances[1] and no mitigating circumstances and accordingly, fixed Appellant's penalty at death. Appellant filed post-trial motions, which were denied. Appellant's trial counsel then withdrew from representation, and Appellant was appointed new counsel for purposes of his direct appeal. On July 21, 1995, this Court affirmed Appellant's judgment of sentence. See Commonwealth v. Bracey, 541 Pa. 322, 662 A.2d 1062 (1995). Appellant filed a pro se PCRA petition on May 10, 1996. The Center for Legal Education, Advocacy and Defense Assistance (CLEADA) was appointed to represent Appellant and subsequently filed an amended PCRA petition on Appellant's behalf. In response, the Commonwealth filed a motion to dismiss the petition based upon the existing record. Following a hearing, the PCRA court found that all but one of Appellant's claims could be decided on the existing record. Therefore, the PCRA court granted Appellant's request for an evidentiary hearing on the sole issue of whether counsel rendered ineffective assistance during the penalty phase of Appellant's trial and denied Appellant's request for an evidentiary hearing on all remaining grounds. Following a seven-

1. The two aggravating circumstances found by the sentencing jury were that the victim was a police officer killed in the performance of his duties, 42 Pa.C.S. § 9711(d)(1), and that Appellant had a significant history of felony convictions involving the use or threat of violence, 42 Pa.C.S. § 9711(d)(9).

day evidentiary hearing, the PCRA court denied relief. Appellant then filed the instant appeal.

Appellant raises numerous issues in his voluminous brief to this Court. The Commonwealth argues, however, that several of Appellant's claims have either been waived or previously litigated. We agree.

To be eligible for relief under the PCRA, a petitioner must establish that his allegations have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An issue is deemed finally litigated for purposes of the PCRA if the "highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). If the allegations of error have not been previously litigated, a petitioner must also demonstrate that those allegations have not been waived. An allegation is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, [or] on appeal. . . ." 42 Pa.C.S. § 9544(b).

■■■■ Here, Appellant claims that the Commonwealth improperly introduced victim-impact evidence during the penalty phase of his trial; that the Commonwealth improperly relied on two burglary convictions to establish the aggravating circumstance under 42 Pa.C.S. § 9711(d)(9), i.e. that the defendant has a significant history of felony convictions involving the use or threat of violence; and that his confession was involuntary and therefore, inadmissible. These claims were all disposed of on Appellant's direct appeal to this Court, see *Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062, 1068–75 (1995), and have therefore been previously litigated for purposes of the PCRA.[2] Accordingly, these claims are not review-

---

2. Appellant's attempt to frame these previously litigated issues as claims of prior counsel's ineffectiveness does not make these claims cognizable under the PCRA. This Court has held that a petitioner cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. See *Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 896 (1999); see also *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 703 (1998) (issue remains previously litigated within meaning of PCRA despite appel-

 

able under the PCRA. *See* 42 Pa.C.S. § 9543(a)(3).[3]

◼ Appellant also raises several claims of trial court and constitutional error and claims of prosecutorial misconduct that have been waived. Specifically, Appellant contends that the overwhelming presence of uniformed police officers at his trial subverted the fundamental fairness of his trial; that the trial court erred in failing to advise the jury regarding the meaning of a life sentence under *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); that the aggravating circumstance listed in 42 Pa.C.S. § 9711(d)(9) is unconstitutionally vague; that the prosecutor committed misconduct by suggesting that Appellant had an alias; that the prosecutor unconstitutionally used his peremptory strikes in a discriminatory manner under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); that the alleged error under *Batson* violated international law; and that the trial court erred in failing to adequately instruct the jury on the nature of aggravating and mitigating factors. Appellant could have raised each of these claims in his direct appeal to this Court but failed to do so. Accordingly, these claims are waived under the PCRA and therefore, can offer Appellant no basis for relief.[4]

lant's assertion that counsel's ineffectiveness caused claim to fail on direct appeal).

**3.** Appellant also argues that the victim impact testimony that he now complains of was broader than that challenged on his direct appeal. To the extent that this claim has not been previously litigated, and to the extent that Appellant avoids a finding of waiver by making an adequate argument that all prior counsel were ineffective for failing to properly litigate this ·claim, such allegations of ineffectiveness offer Appellant no basis for relief. In support of his claim, Appellant essentially relies on *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130 (1996), where this Court explicitly held, for the first time, that victim impact testimony was inadmissible at the penalty phase of a capital case under the statute then in effect. However, because *Fisher* was handed down after Appellant's direct appeal to this Court was decided, Appellant is not entitled to rely on that case to support claims made in a collateral appeal such as the one presented here. *See Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343 (1997) (even decision that is given full retroactive effect is not applied to any case on collateral review unless the decision was handed down during pendency of defendant's direct appeal and issue was properly preserved).

**4.** At the end of his argument relating to several of these waived claims, Appellant, in what appears to be nothing more than an after-thought,

In his reply brief to this Court, Appellant argues that the Court must review all of his issues on the merits, despite any waiver, in accordance with our relaxed waiver rule in capital cases.[5] In *Commonwealth v. Albrecht*, however, this Court held that "while it has been our 'practice' to decline to apply our ordinary waiver principles in capital cases, we will no longer do so in PCRA appeals." *Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998) (citations omitted). This holding was based in part on the recognition that the very terms of the PCRA exclude waived issues from the class of cognizable PCRA claims. *Id.*; 42 Pa.C.S. § 9543(a)(3) (to be eligible for relief under PCRA, a petitioner must prove that the allegation of error has not been waived). Thus, under *Albrecht*, the relaxed waiver rule is no longer applicable to PCRA appeals and therefore, any claims that have been waived by Appellant

tacks on a sentence that trial and appellate counsel were ineffective for failing to raise and/or properly litigate the underlying claims of error. Such an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief. Moreover, when addressing these claims in his PCRA petition, Appellant either failed to raise a properly layered ineffectiveness claim or did so in the same inadequate and cursory manner in which he attempts to present such claims to this Court. *See Commonwealth v. Zillgitt*, 489 Pa. 189, 413 A.2d 1078, 1079 n. 3 (1980) (appellate court will not consider issue unless it is properly presented in post-conviction petition).

5. Despite Appellant's clear burden under the PCRA to show, as a threshold matter, that an issue has not been waived, Appellant waited until his reply brief to raise a number of arguments as to why his claims should not be dismissed as waived. Under our Rules of Appellate Procedure, an appellant is prohibited from raising new issues or reme-dying an original brief's deficient discussions in a reply brief. *See* Pa. R.A.P. 2113(a); *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 219 n. 8 (1999). Nonetheless, because this appeal necessitates a discussion of the applicability of the relaxed waiver doctrine to PCRA capital appeals, and because the Commonwealth has filed a motion to respond to Appellant's reply brief and provided such a response, we will review Appellant's claims regarding the relaxed waiver doctrine, grant the Commonwealth's motion to permit response and consider such re-sponse to Appellant's relaxed waiver argument in his reply brief. *See Fahy*, 737 A.2d at 219 n. 8 (discussing impropriety of Appellant raising number of arguments as to why his PCRA petition was not untimely filed for first time in reply brief, but granting Commonwealth's motion to respond and reviewing Appellant's arguments regarding timeliness).

are beyond the power of this Court to review under the terms of the PCRA.

■ Appellant asserts, however, that retroactively applying the rule in *Albrecht* to his case, which involves a PCRA petition filed before the decision in *Albrecht* was issued in November of 1998, would unconstitutionally permit a "new rule of law" to bar review of his claims. We disagree. As we stated in *Commonwealth v. Pursell:*

> [W]e recently held that we would no longer apply the "relaxed waiver" rule applicable to direct appellate review of capital cases in appeals from post-conviction proceedings in capital cases. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998). Instead, we now require strict adherence to the statutory language of the PCRA, and will afford post-conviction review only where a petitioner shows that the statutory exceptions to waiver in the PCRA apply [found in the pre–1995 version of the PCRA], or where a petitioner properly raises claims of counsel's ineffectiveness. **Because this represents a clarification of our existing standard for reviewing appeals from the denial of post-conviction petitions in capital cases, we apply the *Albrecht* standard to all similar cases currently under review by this Court.**

*Pursell,* 555 Pa. 233, 724 A.2d 293, 302 (1999) (emphasis added). *See also Commonwealth v. Porter,* 556 Pa. 301, 728 A.2d 890, 897 (1999) (*Albrecht* clarified standard that relaxed waiver rule will not apply to collateral attacks). Thus, because *Albrecht* merely clarified this Court's practice of relaxing our waiver rules in death penalty cases, Appellant suffers no constitutional violations by having *Albrecht* applied to his case. *See Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 725–26 (2000) (applying *Albrecht* to PCRA appeal, where defendant filed PCRA petition in 1995, did not constitute unconstitutional retroactive application of new rule of law because *Albrecht* merely represented clarification of existing standard for reviewing PCRA appeals). Moreover, we note that this Court has consistently refused to invoke the relaxed waiver rule under *Albrecht* in PCRA capital appeals similar to

the instant one. *See, e.g., Commonwealth v. Pursell,* 724 A.2d at 306 (applying *Albrecht* to 1982 conviction, where PCRA petition was filed in 1991); *Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d 346, 354 (1999) (applying *Albrecht* to 1988 conviction, where PCRA petition was filed in 1993); *Commonwealth v. Wallace,* 555 Pa. 397, 724 A.2d 916, 920–21 (1999) (applying *Albrecht* to 1985 conviction, where PCRA petition was filed in 1995). Accordingly, we find no merit to Appellant's argument that *Albrecht* cannot constitutionally be applied to his case.

■ Appellant also raises several claims of prior counsel's ineffectiveness. Because these claims are framed as ones of ineffectiveness, and because they are adequately argued under the standard governing such claims, these claims have not been waived for purposes of the PCRA and are therefore, reviewable.[6]

■ To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999); *Commonwealth v. Douglas,* 537 Pa. 588, 645 A.2d 226, 230 (1994).

■ Appellant first claims that the PCRA court erred in finding that Appellant's trial counsel, Mr. Perrone, did not render ineffective assistance at his penalty phase. Specifically, Appellant argues that Mr. Perrone was ineffective for failing to adequately investigate and present evidence at the

6. As this Court has previously stated, a petitioner can avoid a finding of waiver under the PCRA by making a proper claim of ineffective assistance of counsel at his first available opportunity to do so. *Commonwealth v. Wallace,* 724 A.2d at 921. Here, the PCRA petition marked the first opportunity Appellant had to challenge appellate counsel's failure to assert claims of trial counsel's ineffectiveness and therefore, Appellant's layered claims of prior counsel's ineffectiveness are not waived.

penalty phase that Appellant was organically brain damaged or mentally ill. In support of his claim, Appellant presented the testimony of Drs. Carol Armstrong, Neil Blumberg and Barry Krop, who examined Appellant five and six years after the shooting, and essentially concluded that Appellant has suffered from long-standing organic brain damage.

Appellant's claim, however, is negated by the mental health evaluation conducted by Dr. Arthur Boxer on September 15, 1991, less than one year after the murder. Prior to trial, Mr. Perrone hired Dr. Boxer, a board-certified psychiatrist who had performed at least two hundred psychiatric evaluations in criminal cases before evaluating Appellant.[7] Mr. Perrone asked Dr. Boxer to evaluate Appellant to determine whether there were any psychiatric defenses available to him at trial and whether there was any mental health mitigation evidence that could be presented to the jury at the penalty phase. Following his examination, Dr. Boxer sent Mr. Perrone a letter indicating that, based on his evaluation of Appellant and review of the mitigating circumstances allowed by the Commonwealth, he did not see any mitigating mental health evidence that could be presented at the penalty phase. N.T., 4/28/98, at 28, 40, 80; *see also* Letter by A. Boxer, M.D. to N. Perrone, Jan. 31, 1992. Rather, Dr. Boxer testified at the PCRA hearing that Appellant had been responsive and articulate during his evaluation and had not behaved in a manner that suggested that he had any psychiatric problems. *See* N.T., 4/28/98, at 65. Dr. Boxer further testified that he had not seen any evidence of organicity or any indication that Appellant had organic brain damage or a major mental illness during his evaluation of Appellant. *Id.* at 70–71. Dr. Boxer relayed this information to Mr. Perrone, testifying that prior to sending the letter, he also spoke to Mr. Perrone on the telephone and indicated to him that he would be unable to offer testimony helpful to establishing any mental health mitigation evidence. *Id.* at 70–71, 80.

7. Dr. Boxer was referred to Mr. Perrone by the Mental Health Division of the Defenders Association of Philadelphia.

We agree with the PCRA court that Mr. Perrone reasonably relied on the opinion of Dr. Boxer, who no one disputes is a qualified psychiatric expert. Despite Appellant's suggestions to the contrary, counsel was not required to disregard the findings of his expert and continue to consult experts, at the expense of limited judicial resources, until he found one willing to testify that Appellant was organically brain damaged or manifested some kind of major mental illness. As Mr. Perrone stated at the PCRA hearing, "I'm not a psychiatrist, psychologist . . . that's why I had Dr. Boxer evaluate [Appellant]." N.T., 4/22/98, at 101. Clearly, Mr. Perrone was entitled to rely on the observations and conclusions of Dr. Boxer, who informed Mr. Perrone that his evaluation did not reveal any mental health mitigation evidence that he could testify to at Appellant's penalty phase hearing. N.T., 4/28/98, at 28, 40, 80.

Moreover, as the PCRA court noted, prior mental health evaluations of Appellant did not give rise to the conclusion that Appellant was brain damaged or mentally ill. One court-ordered mental health evaluation of Appellant, prepared by Dr. Edwin Camiel in 1982, stated that although Appellant showed evidence of a personality disorder, he did not manifest any major mental illness. Likewise, a mental health evaluation report prepared by Philadelphia court psychologist Lawrence Byrne in 1984 indicated that while Appellant had schizoid personality traits, he suffered from no psychological factors which would interfere with the court's ability to sentence him. Both Dr. Camiel and Mr. Byrne, who also evaluated Appellant for the instant case and found him to be competent for sentencing, testified at the evidentiary hearing that they saw no signs of organicity or organic brain damage during their evaluations of Appellant. N.T., 4/24/98, at 230; N.T., 4/27/98, at 20, 44. While Appellant baldly asserts that Mr. Perrone was also ineffective for failing to present Dr. Camiel's and Mr. Byrne's mental health reports to the jury, we agree with the PCRA court that counsel's decision not to do so did not constitute ineffectiveness. *See Commonwealth v. Holland,* 556 Pa. 175, 727 A.2d 563, 565 (1999) (counsel not

ineffective for failing to introduce prior mental health reports at penalty hearing when reports were product of psychological examinations of defendant resulting from criminal activity and would therefore have contained details of prior crimes): *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513, 531 (1988) (counsel not ineffective for failing to introduce evidence that would have shown defendant to be an anti-social person who suffered from severe personality disorder).[8]

In sum, we find no error in the PCRA court's determination that counsel was not ineffective for failing to pursue and present evidence related to Appellant's alleged mental illness and organic brain damage when previous mental health evaluations did not conclude that Appellant was brain damaged or mentally ill and when counsel consulted a recognized mental health expert and relied on his conclusion that his evaluation revealed no mitigating mental health evidence to which he could testify. Thus, this claim fails to offer Appellant any basis for relief. *See Commonwealth v. Lewis*, 560 Pa. 240, 743 A.2d 907, 909 (2000) (although defendant offered testimony of psychiatrist, who examined Appellant fifteen years after the murder, to support his claim that counsel was ineffective for failing to present evidence of defendant's mental illness at defendant's penalty hearing, defendant's claim was negated by mental health evaluation conducted less than one year after murder which concluded that defendant did not manifest any major mental illness).

■■■ Appellant also alleges that counsel was ineffective for failing to discover and present evidence that as a child, he was physically and emotionally abused by his father and stepfather. He contends that counsel should have discovered this evidence of abuse from family members and presented such evidence as mitigation in the penalty phase of his trial. This claim fails.

8. We also note that the Commonwealth presented the testimony of Dr. Thomas Sacchetti, a board-certified neurologist, at the PCRA hearing. Dr. Sacchetti essentially agreed with the findings of Dr. Boxer, Mr. Byrne and Dr. Camiel, testifying that Appellant does not suffer from organic brain disease. N.T., 4/28/98, at 112.

Mr. Perrone testified at the PCRA hearing that he met with members of Appellant's family several times and that, although he asked questions about Appellant's background, no one indicated during the interviews that Appellant had been abused as a child. N.T., 4/22/98, at 90–91, 108–09, 124. Further, Appellant himself did not inform counsel of any physical abuse and had even informed previous mental health practitioners that he had not had any problems at home and had gotten along with his stepfather. *See* Evaluation by L. Byrne, May 4, 1984; Evaluation by A. Boxer, M.D., Sept. 15, 1991 (family history section of report noting Appellant's statement that stepfather "did everything for us."); N.T., 4/24/98, at 224–25; N.T., 4/27/98, at 19, 20. Because Appellant and his family failed to reveal the abuse to counsel during their consultations with him, counsel cannot be deemed ineffective for failing to present such evidence. *See Commonwealth v. Miller,* 560 Pa. 500, 746 A.2d 592, 599 (2000) (counsel not ineffective for failing to present evidence of abuse when defendant and his family failed to reveal such evidence of abuse to counsel); *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373, 383 (1986) (reasonableness of counsel's investigative decisions depends critically upon information supplied by defendant).[9]

■ Next, Appellant argues that the PCRA court erred by failing to grant an evidentiary hearing or a new trial based on his remaining claims of ineffective assistance of counsel. Under Rule 1509 of the Rules of Criminal Procedure, a PCRA court is entitled, after a review of the petition, answer and other matters of record, to determine whether an evidentiary

9. Although Appellant's mother and sisters never disputed at the PCRA hearing that they did not inform Mr. Perrone that Appellant had been abused as a child, Appellant complains that this omission resulted from counsel's failure to ask the right questions. During his interviews with the family, however, counsel did question the family about Appellant's background and household environment, *see* N.T., 4/22/98, at 108–09, but no suggestions were made that Appellant's background included physical or emotional abuse. As the PCRA court found, the record in the instant case simply does not demonstrate that "counsel failed to ask questions which would logically lead to the answers [Appellant] now claims went unexplored." PCRA Ct. Op., July 28, 1998, at 21.

hearing is required. *See* Pa. R.Crim. P. 1509; *Commonwealth v. Morris,* 546 Pa. 296, 684 A.2d 1037, 1042 (1996) (no need for evidentiary hearing under PCRA where there are no genuine factual issues to be resolved). After reviewing the record, we find that the PCRA court acted within its discretion when it denied Appellant's petition without holding a hearing on the following ineffectiveness claims.

First, Appellant contends that the PCRA court erred in failing to hold a hearing on his assertion that Mr. Perrone was ineffective for failing to impeach the testimony of Hector Crespo. We disagree.

At Appellant's trial, Mr. Crespo, who had witnessed the shooting of Officer Boyle from his apartment window, testified for the Commonwealth. Mr. Crespo testified that in the early morning hours of February 4, 1991, he heard a crash, looked out the window of his third floor apartment and saw a man pull out a gun and jump on the hood of a police car. N.T., 2/25/92, at 106–07. Mr. Crespo heard the man, who was pointing a gun at the officer, tell the officer "Don't go for that * * * gun." *Id.* at 110. Mr. Crespo then saw the police car reverse and the man with the gun run to the passenger window of the police car and shoot the officer inside. *Id.* at 111.

While Appellant contends that Mr. Perrone was ineffective for failing to impeach Crespo on his ability to see and identify Appellant, the record demonstrates that counsel effectively cross-examined this witness. During cross-examination, Mr. Perrone brought out the fact that Crespo was unable to see the shooter's face from his third floor apartment, that Crespo's apartment was approximately 140 feet from the crime scene, that Crespo had been sleeping when he first heard the crash and that it was dark outside when Crespo witnessed the shooting. N.T., 2/25/92, at 127–36. Mr. Perrone also tried to establish that a light pole and a billboard actually blocked Crespo's view of the shooting. *Id.* at 153–54. Moreover, the jury was shown photographs of the view from Crespo's apartment to the crime scene. *Id.* at 116. Given this record, it is clear that counsel was not ineffective in his efforts to impeach

Crespo on his ability to see and identify Appellant. Accordingly, the PCRA court did not err in denying relief without first holding a hearing on this claim.

■ Appellant also complains that the PCRA court erred in failing to grant a hearing on his claim that counsel was ineffective for failing to interview and call three witnesses, namely Bobby James Payne, Donna Stroman and Arthur Berry, regarding their allegations that police were intimidating witnesses throughout their investigation of Officer Boyle's murder. This claim fails.

■ To establish that counsel was ineffective for not calling certain witnesses, a defendant must prove (1) the existence and availability of the witnesses; (2) counsel's actual awareness of, or duty to know, the witnesses; (3) the witnesses' willingness and ability to cooperate and appear on the defendant's behalf; and (4) the necessity for the proposed testimony. Commonwealth v. Wilson, 543 Pa. 429, 672 A.2d 293, 298 (1996).

Here, Appellant has failed to meet his burden. His brief to this Court fails to establish that Mr. Perrone was aware, or should have been aware, of Bobby James Payne or Donna Stroman, or that they had information related to alleged police misconduct. As to Mr. Berry, Appellant has failed to establish that Mr. Berry was prepared to cooperate and testify for him at trial. In fact, Mr. Berry did testify at Appellant's trial for the Commonwealth. N.T., 2/26/92, at 60. There is simply no indication that Mr. Perrone should have known of Mr. Berry's allegations of police misconduct, which were not made until long after Mr. Berry testified for the Commonwealth at Appellant's trial. Thus, Appellant has failed to establish that counsel was ineffective for not calling these witnesses and the PCRA court properly dismissed this claim without a hearing.

■ Next, Appellant claims that the PCRA court should have granted a hearing on his claim that Mr. Perrone was ineffective for failing to request a competency hearing. He essentially contends that his family members' testimony at the PCRA hearing that he has always been "slow" and the opin-

ions of Drs. Armstrong, Blumberg and Krop demonstrate that counsel should have challenged Appellant's competency to stand trial. This claim fails.

In the first instance, Appellant's reliance on the conclusions of his defense experts to support his competency claim is misplaced. Although the focal time for evaluating a defendant's competency is at the time of trial, Appellant's defense experts did not evaluate Appellant until five or more years after Appellant's trial. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1270 (1989) (pertinent time for purposes of determining competency to stand trial is time of trial). In any event, the record does not indicate that Mr. Perrone was ineffective for failing to seek a competency hearing. Mr. Perrone testified that during his pre-trial interviews with Appellant, there was no indication that Appellant was not competent to stand trial. N.T., 4/22/98, at 146. These observations were substantiated by Dr. Boxer, the psychiatrist Mr. Perrone hired to evaluate Appellant. Following his evaluation, Dr. Boxer did not in any way question Appellant's competency or offer any conclusions that would lead Mr. Perrone to challenge his client's competency. Rather, Dr. Boxer testified that Appellant was articulate and responsive during his evaluation and did not act in a manner that was suggestive of any psychiatric problems. N.T., 4/28/98, at 65. In addition to these findings by Dr. Boxer, we note that Mr. Byrne conducted a mental health evaluation of Appellant in the days following his convictions in the instant case and concluded that Appellant was competent for sentencing, noting that he was coherent and cooperative during the evaluation and understood the nature of the interview. *See* Evaluation by L. Byrne, March 4, 1992. Based on these circumstances, we decline to find that counsel was ineffective for failing to seek a competency hearing and thus, find that the PCRA court did not err in denying relief without first holding a hearing on this claim.

Next, Appellant argues that the PCRA court erred in failing to hold a hearing on his claims that counsel was

ineffective for failing to present the defenses of diminished capacity, imperfect self-defense and voluntary intoxication. We disagree.

Again relying on family members' testimony and the expert opinions presented at his PCRA hearing, Appellant first asserts that Mr. Perrone was ineffective for failing to investigate and present a defense of diminished capacity.[10] As discussed above, however, Mr. Perrone consulted a reputable mental-health expert for the purpose of determining whether there were any psychiatric defenses that could be presented at trial. Dr. Boxer evaluated Appellant and informed Mr. Perrone that Appellant did not suffer from organic brain disease or any other major mental illness. Instead, he diagnosed Appellant as suffering form an anti-social personality disorder. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 944 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) (personality disorder does not suffice to demonstrate accused's diminished capacity). Since counsel was entitled to rely on Dr. Boxer's expert opinion, he cannot be deemed ineffective for failing to present a defense that contradicted that opinion.

Next, Appellant asserts that Mr. Perrone should have presented an imperfect self-defense theory at trial. He suggests that the abuse he suffered as a child left him with "ingrained fear and exaggerated startle response" and that this evidence, if presented to the jury by Mr. Perrone, would have explained why Appellant believed he was in danger and therefore, shot Officer Boyle.[11] This claim is meritless.

Under 18 Pa.C.S. § 2503(b):

10.  When asserting a diminished capacity defense to first-degree murder, a defendant is attempting to negate the element of specific intent to kill and if successful, first-degree murder is reduced to third-degree murder. *Commonwealth v. McCullum*, 558 Pa. 590, 738 A.2d 1007, 1009 (1999). The defense of diminished capacity is extremely limited and can only be established if the defendant proves that at the time of the killing, he was suffering from a mental disorder that specifically affected the cognitive functions of deliberation necessary to formulate a specific intent to kill. *Id.*

11.  Since there is no indication that Officer Boyle used or attempted to use his weapon, it appears that Appellant is suggesting that he believed

A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b). In explaining what elements are necessary to establish unreasonable belief voluntary manslaughter, which is sometimes referred to as "imperfect self-defense," we have stated:

This self-defense claim is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [still be met in order to establish] unreasonable belief voluntary manslaughter.

*Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575, 582 (1991). In order to establish the defense of self-defense under 18 Pa.C.S. § 505, the defendant must not only show that he was protecting himself against the use of unlawful force but must also show that he was free from fault in provoking or continuing the difficulty which resulted in the killing. *See* 18 Pa.C.S. § 505; [12] *Tilley*, 595 A.2d at 581. Here, even if there was any evidence that Officer Boyle was using anything but lawful force in his encounter with Appellant, Appellant clearly could not establish that he was free from fault in provoking the event that led up to Officer Boyle's murder. Before fatally shooting Officer Boyle, Appellant jumped on the hood of Officer Boyle's car, aimed a loaded handgun at him and ordered him not to touch his weapon. Since there was

Officer Boyle was going to run him over when trying to escape Appellant's loaded gun. However, the record demonstrates that Officer Boyle actually put his cruiser into reverse and backed away from Appellant before Appellant fired his gun.

**12.** 18 Pa.C.S. § 505 provides:

The use of force upon or toward another person is justifiable when, the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

absolutely no evidence that Appellant acted in self-defense—imperfect or otherwise—Appellant's claim that his counsel was ineffective for failing to present such evidence necessarily fails. Consequently, the PCRA court did not err in denying Appellant's request for a hearing on this claim.[13]

■ With little elaboration, Appellant also claims that Mr. Perrone should have investigated and presented a defense that he was voluntarily intoxicated when he shot Officer Boyle. This claim is without merit. As Appellant concedes, the only alleged evidence of any potential intoxication at the time of the murder was Appellant's own statement that he had been drinking before the offense. Clearly, Appellant's bald assertion that counsel should have somehow mounted a voluntary intoxication defense from this statement, when he offers absolutely no other evidence to support his claim that he was intoxicated at the time of the shooting, fails to offer him any basis for relief. *See Commonwealth v. Mason*, 559 Pa. 500, 741 A.2d 708, 714 n. 4 (2000) (in order to establish voluntary intoxication, evidence must show that defendant was unable to form specific intent to kill because he was so overwhelmed or overpowered by alcohol/drugs to the point of losing his faculties at time crime was committed).

■ Finally, Appellant asserts that he is entitled to relief due to the cumulative effect of the alleged errors and instances of ineffective assistance of counsel. In previously addressing a similar claim, this Court has stated that "no number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716, 722 (1992). This principle applies equally to the instant case.

In sum, we find that those claims of Appellant that have not been previously litigated or waived are without merit. Moreover, the PCRA court properly rejected Appellant's claim that

13. As the Commonwealth points out, despite the fact that there was no evidence to support a finding that Appellant acted in self-defense, counsel did argue that Appellant fired at the officer because he was scared and also requested and received an instruction on voluntary manslaughter.

counsel rendered ineffective assistance at his penalty phase hearing and acted within its discretion by dismissing the remainder of his claims without holding a hearing. The order of the PCRA court denying post-conviction relief is therefore affirmed.[14]

Justice CAPPY and Justice CASTILLE file a concurring opinions.

Justice SAYLOR files a concurring opinion in which Justice CAPPY joins.

Justice CAPPY concurring.

I join the concurring opinion of Mr. Justice Saylor, for the reasons as more fully set forth in the concurring opinion of this author filed in *Commonwealth v. Lambert*, 568 Pa. 346, 797 A.2d 232 (Pa.2001).

Justice CASTILLE concurring.

Although I agree with the majority that appellant is not entitled to PCRA relief from his death sentence for the murder of Philadelphia Police Officer Daniel Boyle, I do not entirely agree with the majority's characterization and analysis of appellant's "layered" claims of counsel ineffectiveness. I also write separately to briefly address appellant's argument that the failure to apply "relaxed waiver" to defeat the PCRA's statutory waiver provisions would be unconstitutionally retroactive.

The majority holds that those of appellant's claims sounding primarily in trial court error are either previously litigated (claims I, IV, and VII) or waived (claims II, III, V, VI, VIII, IX, and X). As to the several claims it deems waived, the majority correctly notes that those claims could have been raised on direct appeal, but were not. Op. at 939–40. I agree with the majority as to its previously litigated and waiver holdings and join in its opinion on these issues.

---

**14.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).

The majority also notes that, as to each of the waived claims of trial court error, appellant adds an undeveloped, conclusory argument that trial and appellate counsel were ineffective for failing to raise the claim. The majority summarily holds that the boilerplate allegations of layered ineffectiveness do not prove an entitlement to relief. Op. at 940 n. 4.

Though boilerplate, these nevertheless are distinct, independent Sixth Amendment claims that are cognizable in their own right under the PCRA. *See* discussion below. Moreover, under this Court's precedent in *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000), the boilerplate nature of an argument on ineffectiveness has been held to be an insufficient basis to deem such a claim waived under our appellate rules. *Accord Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 525–26 (2001). I would acknowledge the independent, non-waived nature of these layered ineffectiveness claims under *Marrero*, but I would reject them on the merits for the reasons I explain below involving appellant's other claims that direct appeal counsel was ineffective.

The remainder of appellant's substantive claims are posed primarily as claims of ineffective assistance of counsel. As the majority notes, appellant alleges that both trial and direct appeal counsel (appellant was represented by new counsel on direct appeal) were ineffective with respect to these claims. The majority also accurately notes that the PCRA petition marked appellant's first opportunity to challenge appellate counsel's stewardship. Nevertheless, the majority inexplicably proceeds to analyze each of these claims as claims of trial counsel ineffectiveness, not appellate counsel ineffectiveness, apparently viewing the allegations as to appellate counsel as operating to "avoid" the waiver of the underlying claim respecting trial counsel. Op. at 351 & n. 6.[1] The majority ultimately rejects the trial counsel ineffectiveness claims on

1. In my view, the majority's statement that an allegation of ineffectiveness suffices to "avoid waiver" misperceives the inquiry under the Sixth Amendment and the PCRA. An allegation of ineffectiveness does not "avoid" waiver of a claim under the PCRA; rather, it is itself a distinct and cognizable claim under the PCRA. As with any other substantive constitutional claim under the PCRA, a claim of ineffectiveness is available only if it has not been waived, *i.e.*, only if the petitioner did

the merits, but it never addresses the constitutionally distinct claims of appellate counsel ineffectiveness.

The claims of trial counsel ineffectiveness unquestionably are waived under the PCRA. An issue is waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, **on appeal,** or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b) (emphasis supplied).[2] *See Commonwealth v. Ragan,* 560 Pa. 106, 743 A.2d 390, 395 (1999). This Court has repeatedly recognized that, "[i]n order to preserve claims of ineffectiveness of counsel under the PCRA, the claims must be raised at the earliest stage in the proceedings at which the allegedly ineffective counsel is no longer representing the claimant." *Commonwealth v. Kenney,* 557 Pa. 195, 732 A.2d 1161, 1164 (1999), *quoting Commonwealth v. Griffin,* 537 Pa. 447, 644 A.2d 1167, 1170 (1994). *Accord Commonwealth v. Green,* 551 Pa. 88, 709 A.2d 382, 384 (1998) ("It is well-established that a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant") (collecting cases); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977).[3]

In his direct appeal, appellant properly raised multiple claims of trial counsel ineffectiveness involving both the guilt

not have a previous opportunity to raise it. Focusing in this manner recognizes the constitutional nature of claims of ineffective assistance of counsel, respects the terms of the PCRA, and ensures that like claims are treated similarly. In this case, as I explain more fully in the text, the only non-waived claims are the claims sounding in appellate counsel's ineffectiveness. The other versions of appellant's claims, *i.e.,* those sounding in trial court error and ineffective assistance of trial counsel, are waived under the PCRA because they could have been raised on direct appeal, but were not.

2. By order dated August 11, 1997, this Court suspended § 9544(b) insofar as it references "unitary review." That suspension is not pertinent here.

3. This Court recently granted allocatur to determine whether this Court's practice of requiring counsel to raise claims of ineffectiveness at the first opportunity where new counsel enters the case, which began with the footnote in *Hubbard,* should be reconsidered. *See Commonwealth v. Grant,* 566 Pa. 231, 780 A.2d 601 (2001)

and the penalty phases of trial, claims which were reviewed and rejected on the merits. *Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062 (1995). Since the additional claims of trial counsel ineffectiveness that appellant now raises were also available to him on that direct appeal, they are waived. *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 212 (2001); *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 526 (2001) ("[T]hose claims that were not raised at the earliest opportunity (on direct appeal) would be deemed waived" under 42 Pa.C.S. § 9544); *id.* at 534 (Castille, J., concurring) (same); *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202, 204 (2000) (Nigro, J., concurring) (pursuant to 42 Pa.C.S. § 9544(b), "Appellant has waived all of his ineffective assistance of trial counsel claims by failing to present them at his first opportunity to do so when his trial counsel no longer represented him, which was on his direct appeal to this Court").

Those claims which are not waived under the PCRA are appellant's allegations that his direct appeal counsel was ineffective for failing to raise the claims of trial counsel ineffectiveness. *Pierce, supra.* Claims that appellate counsel was ineffective are distinct, substantive Sixth Amendment claims separate and apart from the underlying claims of trial court error and trial counsel ineffectiveness. *See Williams*, 782 A.2d at 525 & n. 5 ("competent PCRA counsel must ... undertake to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, including that which relates to appellate counsel"); *id.* at 534–35 (Castille, J., concurring). Unlike his claims of trial counsel ineffectiveness, which appellant could have raised on direct appeal, the claims that appellate counsel was ineffective could not be raised until this PCRA proceeding, which was appellant's first opportunity to assail appellate counsel's performance. Accordingly, the claims are not waived under the PCRA. Moreover, the claims are cognizable under the PCRA, at least in the abstract, because the PCRA explicitly says they are. 42 Pa.C.S. § 9543(a)(2)(ii).

Claims of appellate counsel ineffectiveness are subject to the same general test applied under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny. *Smith v. Robbins,* 528 U.S. 259, 285–89, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (petitioner "must satisfy both prongs of the *Strickland* test in order to prevail·on his claim of ineffective assistance of appellate counsel"). Claims involving appellate counsel ineffectiveness, however, often trigger concerns unique to appellate practice. *Commonwealth v. Lambert,* 568 Pa. 346, 797 A.2d 232, 238–241 (Pa.2001) (Opinion Announcing the Judgment of Court) (discussing cases); *Williams,* 782 A.2d at 535–36 (Castille, J., concurring). As the Commonwealth correctly notes (Brief for Appellee at 15–16), the U.S. Supreme Court has recognized that arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief. *See Jones v. Barnes,* 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "[A]ppellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins,* 528 U.S. at 288, 120 S.Ct. 746 (characterizing *Barnes* ). *Accord Lambert.*

Appellant's claims of appellate counsel ineffectiveness are raised via boilerplate statements at the end of appellant's arguments concerning trial counsel's performance, as well as an overriding, but no less boilerplate, claim at the end of appellant's brief, in which he baldly alleges that "prior counsel" were ineffective for failing to "properly investigate and to make the objections and arguments raised throughout this Brief." Initial Brief of Appellant at 76 (Claim XVII). Although such a boilerplate argument has been deemed sufficient to require merit review of a claim of ineffectiveness, *see Lambert,* 797 A.2d at 248; *Marrero,* 748 A.2d at 203–04 n. 1, the failure to address the *Strickland /Robbins* standard as it applies to appellate counsel's performance will warrant rejection of the appellate counsel claims on the merits. *See Lambert,* 797 A.2d at 243 (collecting cases). *Pierce, supra,* 786

A.2d at 221–22; *Commonwealth v. Rivers*, 567 Pa. 239, 243, 786 A.2d 923, 925 (2001) (Opinion Announcing Judgment of Court). In any event, the claims respecting appellate counsel independently fail in light of the majority's determination that the underlying claims of trial counsel ineffectiveness lack merit. *See generally Pierce, supra.* Appellate counsel cannot therefore be deemed ineffective for failing to pursue meritless claims. *Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121, 128 (1994), *cert. denied, Peterkin v. Pennsylvania*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); *Commonwealth v. Tarver*, 491 Pa. 253, 420 A.2d 438, 438 (1980). In summary, appellant's claims of appellate counsel ineffectiveness, though not waived in light of *Marrero*, fail on the merits.

Turning to relaxed waiver, appellant argues that, notwithstanding the PCRA's waiver provision, and notwithstanding that he has articulated reviewable claims of layered ineffectiveness, the waived versions of his claims cannot be deemed defaulted because of this Court's relaxed waiver rule. The majority responds to this argument by noting that, in *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998), this Court held that the relaxed waiver rule is no longer applicable on PCRA appeal. Appellant argues that the terms of the PCRA and *Albrecht* cannot be applied to his waived claims because that application would be "unconstitutionally retroactive" and would violate due process. According to appellant, until *Albrecht* was decided, the law in this Commonwealth supposedly "was that Pennsylvania's courts should **always** address the merits of claims brought by a death-sentenced prisoner, and should **never** use technical 'waiver' rules to deny relief in a capital case." Reply Brief at 1 (emphases supplied). In an argument he fails to develop beyond attaching a footnote consisting of a string citation to cases from the United States Supreme Court, appellant then declares that *Albrecht* amounts to a "new waiver rule[ ]" which "cannot constitutionally be applied retroactively to appellant." *Id.* The majority rejects this argument, citing to cases that have recognized that *Albrecht* merely enforces the PCRA—a statute, not a "technical waiver rule"—while "clarifying" the

scope of our practice in relaxing judicial waiver doctrine in capital appeals.

Of course, the fact that this Court has called *Albrecht* a "clarifying" rule is not much of a response to the question of retroactivity. Whether clarifying or not, if *Albrecht* altered settled expectations, there are obvious implications which this Court should more squarely address. Furthermore, the answer to the question is a matter of some consequence since this case will, in all likelihood, proceed to federal habeas review where the question of the adequacy of this Court's procedural rulings in light of *Albrecht* and relaxed waiver will be a central issue. Accordingly, I offer the following response to appellant's argument regarding relaxed waiver and the supposed unlawfully retroactive application of *Albrecht.*

Appellant's portrayal of the relaxed waiver rule as an absolute—*i.e.,* as a rule that meant until *Albrecht,* that this Court would **always** address waived claims—is a mischaracterization of our cases. Nor does appellant's misrepresentation of the law in this regard even begin to account for the history, purpose, and scope of the relaxed waiver rule. *See Williams,* 782 A.2d at 533 n. 1 (Castille, J., concurring).

The **statutory** waiver enacted under the terms of the PCRA, which limits the types of claims deemed cognizable on collateral attack, and which is the bar to review of many of appellant's claims here, is not, and never properly was, subject to the "relaxed waiver" practice this Court has employed in capital direct appeal cases to reach certain claims that would otherwise have been unreviewable pursuant to **judicial** waiver doctrines. Our discretionary practice of "relaxing" judicial waiver doctrines in direct capital appeals has its genesis in this Court's opinions in *Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (1978), and *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). *See Albrecht,* 720 A.2d at 700.

The *McKenna* decision involved unique circumstances impossible to divorce from their time. In 1972, the United

States Supreme Court issued its landmark decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which held that death penalty statutes cannot leave unbridled discretion in the sentencing body to determine whether a sentence of death should be imposed in a particular case. *See* 408 U.S. at 256–57, 92 S.Ct. 2726 (Douglas, J. concurring); *McKenna,* 383 A.2d at 177. In response to *Furman,* this Court struck down the Pennsylvania death penalty statute then in effect as violative of the Eighth and Fourteenth Amendments of the United States Constitution. *See Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972). That capital provision, which had been enacted in 1939, left to the jury the sole determination as to whether a sentence of either death or life imprisonment was appropriate for a first degree murder conviction, subject to very general procedural considerations. 18 P.S. § 4701 (repealed).

The Pennsylvania legislature responded by enacting, as part of the Crimes Code of 1972, a death penalty provision that the *McKenna* Court noted "was distinguished by a complete lack of direction as to the circumstances that would warrant imposition of the death penalty." *McKenna,* 383 A.2d at 178.[4] McKenna was tried under the 1972 provision, was convicted of first degree murder and rape, and was sentenced to death by the jury.

The *McKenna* Court held that the 1972 death penalty statute was unconstitutional on its face because it left totally unbridled discretion in the finder of fact to determine the penalty. Indeed, that the 1972 statute was facially unconstitutional under *Furman* and *Bradley* was indisputable. The more difficult question was a question of appellate jurisprudence, *i.e.,* whether to reach the obviously meritorious constitutional issue under *Furman/Bradley,* which was raised only by an amicus brief, in light of the "procedural peculiarity" that McKenna, who himself preferred a sentence of death to life

---

4. The 1972 statute provided only that, "A person who has been convicted of a murder in the first degree shall be sentenced to death or to a term of life imprisonment." 18 Pa.C.S. § 1102. The statute provided less guidance than the 1939 provision that was struck down in *Bradley. McKenna,* 383 A.2d at 178.

imprisonment, expressly refused to challenge the statute and refused to let his lawyer do so.[5] Although this Court recognized that our waiver doctrine was indispensable to the orderly functioning of the appellate judicial process, we nevertheless held that, in "occasional rare situations," the interests of society as a whole in seeing justice done outweighed the doctrine. The unique nature of the death penalty, which is "irrevocable in its finality," combined with the patent unconstitutionality of the entire capital sentencing scheme at issue in *McKenna*, was deemed to be one of those rare situations where the Court had "a duty to uphold the mandates of the constitution over the countervailing considerations of normal appellate procedure." 383 A.2d at 179–81. "[W]here an overwhelming public interest is involved but is not addressed by the parties, this Court has a duty to transcend procedural rules which are not, in spirit, applicable, to the end that the public interest may be vindicated." *Id.* at 181. *See also Albrecht*, 720 A.2d at 700 ("Relaxed waiver, as an operating principle, was created to prevent this court from being instrumental in an unconstitutional execution").

Notwithstanding that *McKenna* involved the unique, "rare" circumstance of a defendant who intentionally refused to challenge the facially unconstitutional death penalty statute under which he was sentenced, *McKenna* has been carried over to and expanded under the current death penalty statute, a statute which has survived multiple constitutional challenges. The first case to so employ *McKenna* was *Zettlemoyer*. *Zettlemoyer* relied upon *McKenna* to reach, not a claim that the then-new death penalty statute was unconstitutional on its face, but a routine evidentiary claim which had been waived because it was not raised in post-verdict motions. We justified overlooking our procedural waiver rule with the following analysis:

[F]or the reasons stated in *Commonwealth v. McKenna* . . . and because this Court has an independent, statutory obligation to determine whether a sentence of death was the

---

**5.** McKenna sought only a new trial, raising nine claims of trial court error, errors that this Court summarily rejected as meritless.

product of passion, prejudice or some other arbitrary factor, whether the sentence is excessive or disproportionate to that imposed in similar cases, and to review the record for the sufficiency of the evidence to support aggravating circumstances, we will not adhere strictly to our normal rules of waiver. **The primary reason for this limited relaxation of waiver rules is that, due to the final and irrevocable nature of the death penalty, the appellant will have no opportunity for post-conviction relief wherein he could raise, say, an assertion of ineffectiveness of counsel for failure to preserve an issue or some other reason that might qualify as an extraordinary circumstance for failure to raise an issue.** 19 P.S. § 1180–4(2). Accordingly, significant issues perceived *sua sponte* by this Court, or raised by the parties, will be addressed and, if possible from the record, resolved.

454 A.2d at 955 n. 19 (emphasis added). The dissenting opinion reflected a similar perceived concern that the situation of death-sentenced defendants was unique because, unlike prisoners receiving lesser sentences, they were unable to seek statutory post-conviction review:

If this were a conventional case, in which a judgment of sentence other than death were imposed, appellant would be able to challenge the effectiveness of counsel in subsequent proceedings initiated pursuant to the Post Conviction Hearing Act [PCHA]. Here, the sentence imposed forecloses the availability of those subsequent proceedings. *See* 42 Pa.C.S. § 9711(i) (record to be transmitted to Governor at close of this Court's review).

*Id.* at 970 (Roberts, J., dissenting). The perceived unavailability of PCHA review in capital cases led the dissent to conclude that the Court should fashion its own procedure for entertaining claims of counsel ineffectiveness. Absent such a procedure, the dissent believed that the Court could not discharge its statutory duty to review thoroughly the judgment of sentence of death. *Id.* at 971.

In the very next opinion from this Court discussing the relaxed waiver rationale, the Court realized that the "primary

reason" leading to *Zettlemoyer*'s approval of the practice, *i.e.*, the perception that PCHA review was unavailable in capital cases, was mistaken. In *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), then Chief Justice Roberts again dissented, reiterating his view that, until new counsel was appointed and a hearing was held on possible claims of ineffectiveness, the Court could not discharge its duty to review the death penalty judgment. *Id.* at 307 (Roberts, C.J., dissenting). In response, Mr. Justice Zappala, writing for a majority of the Court which included the author of *Zettlemoyer*, explained that the notion of the unavailability of PCHA review in capital cases was simply mistaken. Section 9711(i) of the Judicial Code, the only authority cited for the proposition that PCHA review was unavailable in death cases, stated only that a full and complete record must be forwarded to the Governor following affirmance of a death sentence. "[T]he statute does not require that the *official* record be transmitted to the Governor. Nor does the statute in any other way, either expressly or impliedly, remove the case from the jurisdiction of the courts to prevent further action by the courts." Justice Zappala went on to note that the language in the *Zettlemoyer* majority opinion suggesting the unavailability of PCHA relief, in addition to being mistaken, was *dicta.* 467 A.2d at 304 n. 5.

Further experience with state collateral review, of course, has shown that Justice Zappala was correct. Death-sentenced prisoners have been afforded an opportunity for full post-conviction review under the PCHA and its successor, the PCRA. Thus, the "primary reason" for relaxing our procedural waiver rules in death penalty direct appeals proved to be an illusion.

Nevertheless, the practice of relaxing waiver became common in direct appeals in capital cases. The practice has often been justified with no more than a bare reference to the *Zettlemoyer dicta. E.g., Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 40 (1998); *Commonwealth v. Elliott*, 549 Pa. 132, 700 A.2d 1243, 1252 n. 21 (1997); *Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317, 326 n. 15 (1996); *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, 707 n. 4 (1984). On other

occasions, the Court has repeated the erroneous fear of the unavailability of PCHA review as a basis for ignoring our appellate procedure-based waiver rules. *E.g., Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833, 837 n. 6 (1985); *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714, 720–21 (1984).[6]

The relaxed waiver practice, however, was never the absolute appellant portrays it as being. Even at its broadest, relaxed waiver was a discretionary doctrine encompassing only "significant" issues that were "technically" waived, but which could be resolved on the basis of the record generated. *E.g., Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835, 842 (1989). Thus, from the very beginning, this Court declined to relax

**6.** Given this history, there is much to be said for reconsidering relaxed waiver in the context of direct capital appeals. The fact of the matter is that PCRA review does exist, and ineffectiveness claims are cognizable under the PCRA. Abolition of relaxed waiver, or restriction of the doctrine to fundamental constitutional claims, relating to the capital nature of the case, which are apparent on the face of the record, would be a much more realistic and principled approach than what has come into being. Through direct appeal relaxed waiver, this Court reviews a claim in an analytical vacuum, for example, passing on whether something, not objected to, was objectionable, or whether a cautionary charge, not asked for, should have been issued if it had been asked for. The trial judge is in the best position to evaluate these matters in the first instance; the relaxed waiver practice, however, erases the trial judge and his discretionary authority from the picture. Also, there are often specific, tactical reasons why counsel deliberately chooses not to raise an issue. Failing to consider the waived claim for what it really is excludes both the trial judge and trial counsel from the analysis, and leaves this Court to review what amounts to a theoretical claim. Review under the PCRA, on the other hand, allows for consideration of claims in light of what actually happened, and also provides a mechanism by which a record, when necessary, can be generated for review.

Also, the substantive advantage that the relaxed waiver doctrine creates for capital defendants raises concerns. Unlike capital defendants, noncapital defendants may raise waived claims only under the rubric of ineffectiveness, which places a burden of proof upon them, including the requirement of proving prejudice, rather than requiring the Commonwealth to prove harmless error. Whether a claim is subject to harmless error or *Strickland* prejudice can be outcome-determinative. *See Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300 (1994). Since the claims subject to relaxed waiver are not limited to the penalty phase, the capital nature of a case cannot rationally justify such a preferential, substantive treatment of otherwise identically situated defendants.

waiver in many instances—for example, in situations where the failure to raise the claim below might have fallen within the realm of defense trial strategy, or where the absence of a contemporaneous objection made it difficult to resolve the issue on the limited record presented. *See, e.g., Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426, 434–35 (1997) (suppression issue waived where defendant withdrew pre-trial motion to suppress, thereby depriving Commonwealth of opportunity to meet burden of proving that evidence was lawfully seized); *Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719, 725 (1989) (claim that court erred in failing to issue cautionary instruction waived where court offered to give charge and counsel failed to "take a stand" on issue and failed to object when cautionary charge was not forthcoming); *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373, 378 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) (claim that two prospective jurors were improperly excluded for cause waived where trial defense counsel indicated he had no objection to challenges for cause); *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365, 1379–80 (1984) (claim that prospective jurors were improperly excluded waived where counsel's decision not to raise claim or attempt to rehabilitate jurors must be viewed as tactical and where that decision resulted in record that made it difficult to resolve claim). Appellant's brief argument is notable in its failure to cite any of these cases.

Furthermore, this Court has expressly warned that the relaxed waiver doctrine was not to be used, and abused, as a litigation tool:

> This Court does not countenance trial counsel intentionally sitting by silently at trial only later to complain of trial errors on appeal after an unfavorable verdict. That a matter is a death penalty in no way relieves trial counsel of the duty to raise appropriate contemporaneous objections at trial to allow the trial court to cure any alleged error as well as preserve issues for appellate review.

*Commonwealth v. Gibson,* 547 Pa. 71, 688 A.2d 1152, 1161 n. 17 (1997); *Commonwealth v. Williams,* 541 Pa. 85, 660 A.2d

1316, 1319–20 (1995). *See also Commonwealth v. O'Donnell,* 559 Pa. 320, 740 A.2d 198, 204 (1999) (relaxed waiver "was never meant to serve as an invitation to appellate counsel to appear before the Court carte blanche and expect that we will resolve a litany of newly developed challenges not raised or objected to before the lower court"). In addition, we have noted our concern that misuse of the practice "sabotages" the trial court's ability to correct errors and encourages defense attorneys to withhold objection for tactical reasons. *Commonwealth v. Brown,* 551 Pa. 465, 711 A.2d 444, 455–56 (1998).

The final, essential point in any consideration of this Court's relaxed waiver rule is that the waivers it relaxes or excuses are waivers arising from **our** appellate procedural rules and practices. The appellate procedure waiver relaxed in *McKenna* was a doctrine of our creation, designed to ensure "the orderly functioning of the judicial process." *McKenna,* 383 A.2d at 180. It is a doctrine that addresses and is limited to **jurisprudential** concerns. This Court, which is responsible for creating that waiver doctrine, is certainly empowered to modify or excuse it when other, weightier jurisprudential concerns are at issue. *Cf. Craig Williams,* 782 A.2d at 533–34 (Castille, J., concurring). That is what happened in *McKenna.*

The same jurisprudential concern justifies, as a matter of judicial power, a decision to relax our waiver rules on direct capital appeals. The waiver doctrine that we relax on a direct capital appeal is the same one at issue in *McKenna.* But the calculus is entirely different when the waiver at issue arises from a non-judicial source such as the legislative commands of the PCRA. When an issue is waived under the PCRA, it is not because of our appellate preservation/waiver doctrine, but because a legislative judgment has been made as to what types of claims should be available **at all** on collateral review. We cannot simply ignore that legislative judgment as if it were a judicial concern subject to weighing against other judicial concerns. The judicial "relaxed waiver" doctrine devised in *McKenna, Zettlemoyer* and their progeny simply cannot be employed to "rescue" claims that are waived, and hence not cognizable, under the PCRA. *See Craig Williams,* 782 A.2d at

534 (Castille, J., concurring) (noting distinction between waiver under PCRA and waiver as question of appellate jurisprudence).

Nevertheless, this Court erroneously employed our relaxed waiver rule to overcome the legislative waiver provision on occasion before *Albrecht*. *Albrecht* represents the inevitable recognition that the relaxed waiver rule cannot apply in the context of PCRA-based waivers **at all**. *Albrecht* returned the rule to its judicial moorings not only because a contrary practice would prevent finality in capital cases, but also because of separation of powers concerns: "application of the doctrine of relaxed waiver in a PCRA proceeding runs afoul of the very terms of the [PCRA,] which excludes waived issues from the class of cognizable PCRA claims." *Albrecht*, 720 A.2d at 700.

Such is the actual history of the rule that, appellant contends, absolutely entitles him to consideration of his claims on the merits, even if the claims are waived under the PCRA. In my view, enforcement of the statutory terms does not retroactively deprive appellant of any settled right to which he could lay claim. The rule is not, and never was, absolute. The analysis was always case by case: whether a claim would be reviewed on the merits depended upon this Court's assessment of the nature of the particular claim, the waiver at issue, and the record.

This matter is not the sort of case where relaxed waiver would have been appropriate. Appellant invokes relaxed waiver as if of absolute right, and apparently as a litigation strategy. I say "litigation strategy" because a non-waived version of each of appellant's claims was available to him and actually pursued by him; thus, his alternative invocation of relaxed waiver would appear to be strategy-based. Appellant had no settled expectation that this Court would entertain his waived claims instead of, or in addition to, his preserved claims upon mere demand in a PCRA appeal. Furthermore, since appellant mischaracterizes the rule as an absolute, he advances no relevant argument as to why any of his particular claims would have been subject to the discretionary applica-

302

tion of our relaxed waiver rule, such that the majority's application of the holding in *Albrecht* could be deemed "retroactive" as to him. This Court, of course, is not obliged to make appellant's argument for him. Since non-waived versions of appellant's claim were available to, and actually pursued by him, he is not "entitled" to have the waiver of his preferred versions of the claims ignored.

Justice SAYLOR concurring.

I join the opinion of the majority, save for footnote 4. *See Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001).

Justice CAPPY joins this concurring opinion.