J-S52041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MOHAMED SITA BERETE | : | |
| | : | |
| Appellant | : | No. 1609 MDA 2016 |

Appeal from the PCRA Order September 15, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0000933-2011

BEFORE:   GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 03, 2017**

Appellant, Mohamed Sita Berete, appeals *pro se* from the order entered in the Berks County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously set forth the relevant facts and procedural history of this case in its memorandum affirming the judgment of sentence as follows:

> [A]t approximately 10:30 p.m. on February 18, 2011, Officer Christopher A. Cortazzo of the Reading Police Department was on duty, patrolling the area of the 200 block of North Ninth Street, in a marked police car.  Officer Cortazzo observed [Appellant's vehicle] driving along Ninth

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

Street that had tinted front [driver] and passenger-side windows. Officer Cortazzo explained that there was a significant amount of vehicle traffic because a local hockey game had recently ended. While driving in the left lane along Ninth Street, with a consistent line of vehicles travelling in the right lane, Officer Cortazzo passed [Appellant's vehicle]. According to Officer Cortazzo:

> [Appellant's] vehicle appeared to be going very slow so [Officer Cortazzo] attempted to slow down so the vehicle could pass [the officer's car] and [Officer Cortazzo] could get behind it and run the plate. As [Officer Cortazzo] slowed down, it appeared [Appellant's] vehicle was going slower till [Officer Cortazzo] almost had to stop to permit [Appellant's vehicle] to go past [Officer Cortazzo] so [he] could maneuver behind it, [and] run the plate...And once [Officer Cortazzo] did that, to ensure it wasn't stolen...[he] activated [his] overheard emergency lighting...[and Appellant's vehicle stopped in the left lane of traffic.]

As Officer Cortazzo exited his vehicle and approached [Appellant's] vehicle, [Officer Cortazzo] was able to observe [Appellant] through the rear window lean and reach toward the center console area of the vehicle. Officer Cortazzo asked [Appellant] for his license, registration, and insurance. According to Officer Cortazzo, [Appellant] "fumbled around" and then handed [over] his license. Upon [being asked] again for the insurance and registration [Appellant] handed Officer Cortazzo a "clump of paperwork from the glove compartment." Officer Cortazzo had to "fish through that paperwork to find the registration and insurance" and "while [he] was doing that, [Appellant] again turned his body to the right blocking what [Officer Cortazzo] could see with his back and doing something on his right side." Officer Cortazzo had to caution [Appellant] to "stop moving around," "turn forward and pay attention." When questioned by Officer Cortazzo as to whether the vehicle was [Appellant's], [Appellant] responded that the vehicle [belonged] to "Manny." Officer Cortazzo reported that the vehicle was registered to an Edwin Acevedo. During their conversation about ownership of the vehicle, [Appellant] again turned to his

right side after which he was again instructed to "turn around and stop moving" after which Officer Cortazzo asked [Appellant] if "there were any weapons in the car" to which [Appellant] replied "no."

Officer Cortazzo then requested that [Appellant] step out of the vehicle as it was [Officer Cortazzo's] intent to "pat [Appellant] down for weapons because of his movements." As [Appellant] exited the vehicle, Officer Cortazzo instructed [Appellant] to turn around from [Officer Cortazzo] and face [the] vehicle. [Appellant] was not responding; rather, he was "shifting his weight from right to left and looking around." Unsure of whether [Appellant] was "trying to retrieve or hide a weapon or contraband," on [Officer Cortazzo's] third request to [Appellant] to face his vehicle, Officer Cortazzo "reached out to turn [Appellant]; and that's when [Appellant] took both hands and punched [Officer Cortazzo] in the chest, knocking him backwards." Officer Cortazzo fell back approximately five feet and [Appellant] turned and fled, running "south against the flow of traffic, in the lane of traffic."

When Officer Cortazzo regained his balance, he chased after [Appellant] on foot, yelling for him to stop. [Appellant] continued to run, forcing Officer Cortazzo to deploy his Taser after which [Appellant] immediately dropped to the ground. As [Appellant] fell to the ground, Officer Cortazzo "heard a metal object hit the ground." Officer Cortazzo then saw a small semiautomatic pistol lying next to [Appellant]. [Appellant] repeatedly stated, "it's not mine." A search incident to arrest of [Appellant's] vehicle revealed the presence of narcotics.

A serial number scan of the firearm recovered revealed that the owner was George Borgoon, a local store owner who had never met [Appellant] before. When contacted by police, Borgoon stated that he had not seen the firearm for two years, although he never knew it was missing. He believed that the firearm was secured under his son's desk in the back of the store. According to Borgoon's testimony at the time of trial, he does not know [Appellant], and [Borgoon] never gave [Appellant] permission to have the gun.

Following a jury trial, [Appellant] was convicted of firearms not to be carried without a license, escape, receiving stolen property, and possession of a controlled substance. The trial judge also found [Appellant] guilty of windshield obstructions and wipers, a summary offense. … …[On] March 20, 2012, [Appellant] was sentenced to an aggregate term of 62 to 168 months' imprisonment. [Appellant] timely filed a post-sentence motion, which the trial court denied. …

*Commonwealth v. Berete*, No. 877 MDA 2012, unpublished memorandum at 1-4 (Pa.Super. filed March 5, 2013). This Court affirmed the judgment of sentence on March 5, 2013, and on September 17, 2013, our Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Berete*, 69 A.3d 1283 (Pa.Super. 2013), *appeal denied*, 621 Pa. 669, 74 A.3d 1029 (2013).

Appellant timely filed his first *pro se* PCRA petition on May 8, 2014. The PCRA court appointed counsel on May 15, 2014, who filed a *Turner/Finley*[2] no-merit letter on October 2, 2015, along with a motion to withdraw. Appellant filed on October 30, 2015, a *pro se* notice of intent to respond to counsel's *Turner/Finley* letter. On December 3, 2015, Appellant filed a *pro se* amended PCRA petition. On the following day, Appellant filed a *pro se* response to counsel's *Turner/Finley* letter, claiming counsel failed to investigate the issues in Appellant's PCRA petition. The PCRA court granted counsel's motion to withdraw on December 11, 2015,

_____

[2] *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

and appointed new PCRA counsel on the same day.

On April 25, 2016, the PCRA court held an evidentiary hearing. At the hearing, both officers confirmed their testimony was consistent and at no time did they ever state that their testimony in the criminal trial was false. The PCRA court also determined the City of Reading did not "terminate" Officer Cortazzo.

Appellant's second PCRA counsel filed a **Turner/Finley** no-merit letter on August 22, 2016, and a motion to withdraw on August 26, 2016, which the PCRA court granted that same day. Appellant filed a *pro se* response to the second **Turner/Finley** letter on September 6, 2016, claiming PCRA counsel failed to investigate (a) the inconsistent testimony of Officers Cortazzo and Menges and (b) Officer Cortazzo's termination. The PCRA court denied PCRA relief on September 16, 2016. On September 28, 2016, Appellant timely filed a *pro se* notice of appeal. The PCRA court ordered Appellant on October 4, 2016, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, and Appellant timely complied.

Appellant presents the following issues *verbatim* for our review:

> (1) WHETHER THE [PCRA] COURT ABUSED ITS DISCRETION IN DENYING [APPELLANT'S] PCRA PETITION WITHOUT RECKONING WITH THE MERIT AND LEGITIMACY OF THE ISSUES RAISED WHERE THE ARRESTING OFFICER CHRISTOPHER A. CORTAZZO WAS TERMINATED FROM THE POLICE DEPARTMENT BY MAYOR VAUGHN D. SPENCER OF THE CITY OF READING FOR SEVERAL POLICE MISCONDUCTS AND VIOLATION OF THE DEPARTMENT

RULES AND ETHICS AFTER FAILING A "FIT FOR DUTY EXAM," AND WHERE BOTH OFFICERS CORTAZZO AND [MENGES] ADMITTED TO HAVING GIVEN RESPECTIVELY INCONSISTENT TESTIMONY BECAUSE OF THE LAPSE OF TIME BETWEEN THE DAY OF THE INCIDENT AND THE DAY OF THE TRIAL AND INACCURATE TESTIMONY OF HIS FAILURE TO CHECK THE POLICE REPORT BEFORE GETTING ON THE STAND TO TESTIFY[?]

(2) WHETHER [APPELLANT] WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL [JURY TRIAL] WHERE PROSPECTIVE JUROR NO. 16 AND HER HUSBAND WERE FRIENDS AND NEIGHBORS WITH THE PROSECUTING ATTORNEY WHO ALSO STATED THAT SHE COULD NOT BE FAIR[,] AND HAD QUESTIONS OF GUILT OR INNOCENCE ON HER BEFORE AND DURING THE TRIAL[?]

(3) WHETHER THE PCRA COUNSELS' [**TURNER/FINLEY**] LETTERS WERE BOTH BOGUS AND IN CONTRADICTION WITH **COMMONWEALTH V. FINLEY** AND **COMMONWEALTH V. TURNER**, WHERE COUNSELS FAILED [NOT ONLY] TO INVESTIGATE [THE] WITHIN MATTER BUT ALSO FAILED TO CONSIDER THE MERIT OF THE ISSUES RAISED IN [APPELLANT'S] PCRA PETITION[?] THUS, THESE ISSUES WERE SUPPORTED BY THE RECORD AND FILES KEPT BY THE OFFICE OF THE CLERK OF COURTS OF BERKS COUNTY, PENNSYLVANIA.

(4) WHETHER THE ARRESTING OFFICER CORTAZZO VIOLATED THE COURT SEQUESTRATION ORDER BY TALKING TO AND DISCUSSING THE CASE WITH THE PROSECUTING ATTORNEY MR. BOYER AND OTHER OFFICERS/WITNESSES YET TO TESTIFY WHILE HE WAS ORDERED BY THE COURT NOT TO [DO] SO[?] CONSEQUENTLY, THE DENIAL OF [APPELLANT'S] MOTION FOR MISTRIAL CONCERNING THIS VIOLATION OF COURT ORDER WAS ITSELF A VIOLATION OF [APPELLANT'S] RIGHT TO A FAIR AND IMPARTIAL TRIAL. AND WHETHER THE REFUSAL TO [DISCLOSE] THE VIDEO RECORD FROM THE POLICE DASHBOARD CAMERA AS REQUESTED BY [APPELLANT] WAS A VIOLATION OF **BRADY** LAW [AND] THE AFOREMENTIONED VIOLATIONS WERE NOT HARMLESS[?]

(Appellant's Brief at 3).[3]

As a preliminary matter, to be eligible for relief under the PCRA, the petitioner must plead and prove his conviction resulted from one or more of the grounds set forth in 42 Pa.C.S.A. § 9543(a)(2)(i-viii). **Commonwealth v. Zook**, 585 Pa. 11, 887 A.2d 1218 (2005). "Generally, an appellant may not raise allegations of error in an appeal from the denial of PCRA relief as if he were presenting the claims on direct appeal." **Commonwealth v. Price**, 876 A.2d 988, 995 (Pa.Super. 2005), *appeal denied*, 587 Pa. 706, 897 A.2d 1184 (2006), *cert. denied*, 549 U.S. 902, 127 S.Ct. 224, 166 L.Ed.2d 179 (2006); **Commonwealth v. Bell**, 706 A.2d 855 (Pa.Super. 1998), *appeal denied*, 557 Pa. 624, 732 A.2d 611 (1998).

Here, Appellant's second and fourth issues are waived for purposes of review, because he offers them as if he were presenting the claims on direct appeal. **See Price, supra**. **See also** 42 Pa.C.S.A. § 9544(b) (stating issue is waived if petitioner failed to raise it and it could have been raised before trial, at trial, during unitary review, or in prior proceeding under PCRA). Therefore, we will give issues two and four no further attention.

In his remaining issues, Appellant argues his discovery of a newspaper article dated December 19, 2014, alerted him that the City of Reading had fired Officer Cortazzo for unbecoming conduct. Appellant maintains this

---

[3] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

"after-discovered evidence," along with Officers Cortazzo's and Menges' "admissions" of inconsistent testimony, would result in a different verdict because the officers' testimony was the only information used at trial to establish Appellant's guilt. Appellant contends he could use this new evidence beyond impeachment purposes to show the officers had falsified reports and violated ethical rules. Appellant asserts both PCRA counsel rendered ineffective assistance and their respective *Turner/Finley* letters reveal they did not properly investigate these matters. Appellant claims he asked his first PCRA counsel to raise the issue of Officer Cortazzo's termination, but she refused and withdrew; and Appellant's second PCRA counsel also withdrew, even though he knew about the "after-discovered evidence." Appellant complains he was prejudiced by PCRA counsel's ineffective assistance when they ignored his "after-discovered evidence," which could have resulted in a different outcome.[4] Appellant concludes he is entitled to PCRA relief in the form of a new trial. We disagree.

Our standard of review for the denial of a PCRA petition is limited to examining whether the record supports the court's determination and

---

[4] Where PCRA counsel has sought to withdraw from representation, the petitioner must preserve any challenge to PCRA counsel's ineffectiveness in a response to counsel's no-merit letter or, if applicable, the court's Rule 907 notice. *See Commonwealth v. Pitts*, 603 Pa. 1, 9 n.4, 981 A.2d 875, 880 n.4 (2009). In the present case, Appellant preserved these ineffectiveness of PCRA counsel challenges in his responses to the respective *Turner*/*Finley* letters.

whether the court's decision is free from legal error. *Commonwealth v. Ford*, 947 A.2d 1251, 1252 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the certified record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). Credibility resolutions are within the province of the PCRA court when a hearing is held on the petition. *Commonwealth v. Rathfon*, 899 A.2d 365 (Pa.Super. 2006). If the record supports a PCRA court's credibility decision, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). Under the traditional analysis, to prevail on a claim of ineffective assistance of counsel, a petitioner bears the burden to prove his claims by a preponderance of the evidence. *Commonwealth v. Turetsky*, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the asserted action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id. See also Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). "A reasonable probability is a probability that is sufficient

to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 34, 84 A.3d 294, 312 (2014) (quoting ***Commonwealth v. Ali***, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs of the…test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." ***Commonwealth v. Steele***, 599 Pa. 341, 360, 961 A.2d 786, 797 (2008).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

- 10 -

confidence in the outcome. In [**Kimball, supra**], we held that a criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

**Commonwealth v. Chambers**, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (internal citations and quotation marks omitted).

Further, "to succeed on an allegation of…counsel's ineffectiveness…a post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." **Commonwealth v. D'Amato**, 579 Pa. 490, 500, 856 A.2d 806, 812 (2004) (internal citations omitted). "[A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy [the petitioner's] burden of establishing that he is entitled to any relief." **Commonwealth v. Bracey**, 568 Pa. 264, 273 n.4, 795 A.2d 935, 940 n.4 (2001).

Instantly, Appellant's argument that PCRA counsel were ineffective for failure to pursue further Appellant's "after-discovered evidence" claim does not meet the standard governing ineffectiveness claims. Here, Appellant devoted his entire argument to how the purported "after-discovered evidence" would satisfy the first prong of the **Pierce** test. Appellant then simply concluded PCRA counsel rendered ineffective assistance, which prejudiced Appellant. Appellant failed to present argument as to how the second and third prongs of the **Pierce** test were also met with respect to

- 11 -

PCRA counsel. *See D'Amato, supra*; *Bracey, supra*. *See also Commonwealth v. Jones*, 571 Pa. 112, 128, 811 A.2d 994, 1003 (2002) (stating claims of ineffective assistance of counsel are not self-proving). Thus, Appellant did not establish he is entitled to relief on the grounds asserted.

Moreover, regarding Appellant's underlying claims of "after-discovered evidence," the PCRA court reasoned as follows:

> In the case *sub judice*, [Appellant] relies on the ground that there was new evidence showing that there was false testimony of two police officers at [Appellant's] trial. Both officers testified under questioning by [Appellant's] counsel at the PCRA hearing that they had never stated at a civil trial that their testimony in the criminal trial was false. Therefore, this issue is without merit because [Appellant] has not proved that the officers lied at his criminal hearing.
>
> Furthermore, there is no evidence that Officer Cortazzo was terminated by the Reading Police Department instead of retiring from the force. … [Appellant's] claim that his past PCRA counsel should have brought to the court's attention that Officer Cortazzo was terminated has no arguable merit. [Appellant] has no proof as to this allegation. Therefore, he does not meet the first prong of the test, and any claim of ineffectiveness of counsel fails. Even assuming that Officer Cortazzo had been terminated, [Appellant] cannot show how that termination impacted [Appellant's] case.

(PCRA Court Opinion, filed September 16, 2016, at 3-4). The record supports the PCRA court's credibility resolutions and its conclusion that Appellant's underlying claims likewise lacked arguable merit. *See Rathfon, supra*; *Dennis, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/3/2017</u>