J-S46025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHARLES E. GIGGETTS :
:
Appellant : No. 2963 EDA 2019

Appeal from the PCRA Order Entered October 3, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007804-2013

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED: JANUARY 29, 2021**

Appellant, Charles E. Giggetts, appeals *pro se* from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court summarized the factual and procedural history as follows:

On April 18, 2013, [Appellant] car-jacked Lisa McLawler (the "victim") while she was pumping gas at a Sunoco Station. The victim attempted to stop [Appellant] from driving away in her vehicle and was dragged along-side her vehicle for a lengthy distance. While being dragged, [Appellant] ran over the victim's foot, causing her to propel forward and slam face first into the pavement of the gas station. The victim suffered multiple sprains and severe bruising, a large cut on her foot, and burns down the right side of her body from her breast to her hip.

On March 21, 2016, [Appellant] was found guilty by a jury presided over by this [c]ourt of: robbery,[1] aggravated assault,[2] and robbery of a motor vehicle.[3] [Appellant] was originally sentenced on May 13, 2016[,] to an aggregate sentence of fifteen

to thirty years' incarceration to be followed by ten years of probation.

_____

[1] 18 Pa.[C.S.] § 3701(a)(1)(i).
[2] 18 Pa.[C.S.] § 2702.
[3] 18 Pa.[C.S] § 3702.

On May 19, 2016, [Appellant] filed post-sentence motions which were denied on August 1, 2016. On August 30, 2016, [Appellant] filed a Notice of Appeal to the Superior Court.

On January 24, 2017, [Appellant] filed a *pro se* Post-Conviction Relief Act ("PCRA") petition, which was premature since [Appellant's] appeal was not yet decided. On April 13, 2017, [Appellant's] PCRA petition was withdrawn without prejudice.

On September 11, 2017, the Superior Court vacated [Appellant's] judgement of sentence and remanded the case for resentencing. [Appellant's] conviction was affirmed in all other respects. On October 11, 2017, [Appellant] filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. On January 23, 2018, *allocatur* was denied. On April 24, 2018, the [c]ourt resentenced [Appellant].[4]

_____

[4] [Appellant's] overall sentence remained the same. The [c]ourt corrected the sentence for robbery from fifteen to thirty years which was greater than the maximum, and instead sentenced [Appellant] to ten to twenty [years] for robbery and a consecutive five to ten years for robbery of a motor vehicle.

On May 16, 2018, [Appellant] filed the instant, timely, *pro se* PCRA petition. On July 18, 2018, PCRA counsel was appointed. On December 26, 2018, PCRA counsel filed an Amended PCRA petition. On June 14, 2019, the Commonwealth filed a Motion to Dismiss the PCRA petition.

On August 8, 2019, the court denied the instant PCRA petition and issued a Notice of Intent to Dismiss Pursuant to Rule 907 ("907 Notice"). On August 26, 2019, [Appellant] filed a response to the 907 Notice claiming ineffective assistance of PCRA counsel. On September 6, 2019, PCRA counsel was permitted to withdraw and new PCRA counsel was appointed on September 19,

2019.  On October 3, 2019, the PCRA [petition] was formally dismissed.

On October 7, 2019, [Appellant] filed a Notice of Appeal to the Superior Court.  On October 9, 2019, [Appellant] filed a Motion to Proceed *Pro Se*.  On November 13, 2019, [Appellant] filed a *pro se* 1925(b) Statement of Matters Complained of on Appeal.  On November 22, 2019, the Superior Court of Pennsylvania remanded the matter to this [c]ourt for a *Grazier*[1] hearing.  On December 6, 2019, this [c]ourt conducted a *Grazier* hearing and found [Appellant's] waiver of counsel to be knowing, intelligent and voluntary.  During the *Grazier* hearing, [Appellant] stated that he wished to proceed with his November 13, 2019, *pro se* 1925(b) Statement of Matters Complained of on Appeal.  On December 16, 2019, [Appellant] filed a Motion for Transcripts.  On December 30, 2019, [Appellant] filed a *pro se* Application for Supplemental Modification and/or Correction of the Records.[5]

> 5  In this motion [Appellant] makes a bald assertion that the notes of testimony have been altered to favor the Commonwealth.  [Appellant] bases his assertion on his memory of what transpired during the tiral.

PCRA Opinion, 2/7/20, at 1-3.  Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1)  Did the PCRA [c]ourt commit error of law in denying [Appellant] a new trial or evidentiary hearing, where irrefutable evidence was presented that trial counsel's failure to properly notify the court of [Appellant's] alibi defense, investigate, and present [Appellant's] alibi defense witness at trial, manifest violation of [Appellant's] Due Process Rights and so undermined the truth determining process that no reliable adjudication could have taken place?

2)  Did the PCRA [c]ourt commit error of law in denying [Appellant] a new trial or evidentiary hearing, where irrefutable evidence was presented that trial counsel's failure to investigate,

_____

[1] ***Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998).

seek out and present "Expert" Rebuttal Witness to refute the Commonwealth's Expert, under both state and federal laws manifest "Structural Error" and a grave violation of [Appellant's] Due Process Rights and so undermined the truth determining process, that no reliable adjudication could possibly have taken place?

3) Did the PCRA [c]ourt commit error of law in denying [Appellant] a new trial or evidentiary hearing on the matters raised in [Appellant's] "907 Objection(s)" to Her Honor's notice of intent to dismiss, where Post-Conviction Counsel was ineffective for failing to raise meritorious claims that trial counsel was also ineffective for: (A) Agreeing to "Stipulations" tantamount to making the outcome of the trial a foregone conclusion, (B) Failure to provide a "Cogent Defense" for [Appellant], and (C) Failure to object to the admission of "Physical Evidence" not Physically presented at the trial.

Appellant's Brief at 4.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Appellant's issues on appeal allege ineffective assistance of counsel. When considering an allegation of ineffective assistance of counsel, we note

that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) appellant was prejudiced by counsel's action or omission. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Commonwealth v. Reed***, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). "The burden of proving ineffectiveness rests with Appellant." ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007).

Additionally, in a layered ineffectiveness claim, appellate counsel is not ineffective for failing to raise an ineffective assistance of counsel issue where the underlying claim lacks merit. As this Court has explained:

> To prevail on a claim of appellate counsel ineffectiveness for failure to raise an allegation of trial counsel ineffectiveness, a PCRA petitioner must present a 'layered' claim, *i.e.*, he or she must present argument as to each of the three prongs of the ***Pierce***[2] test for each layer of allegedly ineffective representation. To establish the arguable merit prong of a claim of appellate counsel ineffectiveness for failure to raise a claim of trial counsel ineffectiveness, the petitioner must prove that trial counsel was ineffective under the three-prong ***Pierce*** standard.

---

[2] ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987).

If the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the *Pierce* test as applied to appellate counsel.

***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011) (internal citations omitted).

Upon review of the issues raised, the certified record, the briefs of the parties, and the applicable legal authority, we conclude that the PCRA court's opinion entered on February 7, 2020, comprehensively and correctly disposes of Appellant's appeal. Accordingly, we affirm the PCRA court's dismissal of Appellant's PCRA petition, and we do so based on the PCRA court's opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/21

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0007804-2013

              v.                               :

CHARLES GIGGETTS                  :     2963 EDA 2019

## OPINION

Rose Marie DeFino-Nastasi, J.                           February 07, 2020

## PROCEDURAL HISTORY

On April 18, 2013, Charles Giggetts (the "Petitioner"), car-jacked Lisa McLawler (the "victim") while she was pumping gas at a Sunoco Station. The victim attempted to stop the Petitioner from driving away in her vehicle and was dragged along-side her vehicle for a lengthy distance. While being dragged, the Petitioner ran over the victim's foot, causing her to propel forward and slam face first into the pavement of the gas station. The victim suffered multiple sprains and severe bruising, a large cut on her foot, and burns down the right side of her body from her breast to her hip.

On March 21, 2016, the Petitioner was found guilty by a jury presided over by this Court of: robbery,[1] aggravated assault,[2] and robbery of a motor vehicle.[3] The Petitioner was originally sentenced on May 13, 2016 to an aggregate sentence of fifteen to thirty years' incarceration to be followed by ten years of probation.

---

[1] 18 Pa.S.C. § 3701(a)(1)(i).
[2] 18 Pa.S.C. § 2702.
[3] 18 Pa.S.C. § 3702.

On May 19, 2016, the Petitioner filed post-sentence motions which were denied on August 1, 2016. On August 30, 2016, the Petitioner filed a Notice of Appeal to the Superior Court.

On January 24, 2017, the Petitioner filed a *pro se* Post-Conviction Relief Act ("PCRA") petition, which was premature since the Petitioner's appeal was not yet decided. On April 13, 2017, the Petitioner's PCRA petition was withdrawn without prejudice.

On September 11, 2017, the Superior Court vacated the Petitioner's judgement of sentence and remanded the case for resentencing. The Petitioner's conviction was affirmed in all other respects. On October 11, 2017, the Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. On January 23, 2018, *allocatur* was denied. On April 24, 2018, the Court resentenced the Petitioner.[4]

On May 16, 2018, the Petitioner filed the instant, timely, *pro se* PCRA petition. On July 18, 2018, PCRA counsel was appointed. On December 26, 2018, PCRA counsel filed an Amended PCRA petition. On June 14, 2019, the Commonwealth filed a Motion to Dismiss the PCRA petition.

On August 8, 2019, the court denied the instant PCRA petition and issued a Notice of Intent to Dismiss Pursuant to Rule 907 ("907 Notice"). On August 26, 2019, the Petitioner filed a response to the 907 Notice claiming ineffective assistance of PCRA counsel. On September 6, 2019, PCRA counsel was permitted to withdraw and new PCRA counsel was appointed on September 19, 2019. On October 3, 2019, the PCRA was formally dismissed.

---

[4] The Petitioner's overall sentence remained the same. The Court corrected the sentence for robbery from fifteen to thirty years which was greater than the maximum, and instead sentenced the Petitioner to ten to twenty for robbery and a consecutive five to ten years for robbery of a motor vehicle.

On October 7, 2019, the Petitioner filed a Notice of Appeal to the Superior Court. On October 9, 2019, the Petitioner filed a Motion to Proceed *Pro Se*. On November 13, 2019, the Petitioner filed a *pro se* 1925(b) Statement of Matters Complained of on Appeal. On November 22, 2019, the Superior Court of Pennsylvania remanded the matter to this Court for a *Grazier* hearing. On December 6, 2019, this Court conducted a *Grazier* hearing and found the Petitioner's waiver of counsel to be knowing, intelligent and voluntary. During the *Grazier* hearing, the Petitioner stated that he wished to proceed with his November 13, 2019, *pro se* 1925(b) Statement of Matters Complained of on Appeal. On December 16, 2019, the Petitioner filed a Motion for Transcripts. On December 30, 2019, the Petitioner filed a *pro se* Application for Supplemental Modification and/or Correction of the Records.[5] For ease of disposition, the claims will be addressed in the following order:

1. The PCRA Court committed error of law when it denied the Petitioner an evidentiary hearing and subsequent new trial where irrefutable evidence was presented that trial counsel's failure to properly notify the court of and present the Petitioner's alibi defense and alibi defense witness at trial, resulted in the Petitioner's wrongful conviction.
2. The PCRA Court committed error of law when it denied the Petitioner an evidentiary hearing and subsequent new trial where irrefutable evidence was presented that trial counsel's failure to provide an expert rebuttal witness, under both state and federal laws, represented a grave violation of the Petitioner's due process rights to a constitutionally fair and correct trial and so undermined the truth determining process that no reliable adjudication could possibly have taken place.
3. PCRA counsel was ineffective for failing to argue the following claims in the Amended PCRA Petition:
    a. Trial counsel was ineffective for stipulating to the lesser included offenses and withdrawing all of the pre-trial motions.
    b. Trial counsel was ineffective for failing to object to the admission of physical evidence, absent actual production.
    c. Trial counsel was ineffective for failing to call any defense witnesses.

---

[5] In this motion the Petitioner makes a bald assertion that the notes of testimony have been altered to favor the Commonwealth. The Petitioner bases his assertion on his memory of what transpired during the trial.

3

# STATEMENT OF FACTS

The Superior Court has previously summarized the relevant facts as follows:

On April 18, 2013, at approximately 6:45 a.m., Complainant Lisa McLawler stopped to get gasoline at a Sunoco Gas Station on the corner of City Avenue and Conshohocken State Road in Philadelphia. As she was filling her 2010 Chrysler Sebring with gasoline, she heard her car door close. She never heard it open. When she turned around, a man was in her vehicle. She started screaming for him to get out. In a statement to police, she described the assailant as a black man, dark skin, facial hair, full beard, he appeared to be wearing a hoodie or some type of sweatshirt. She testified that he was an "older gentleman," not the teenager-type.

The Complainant had left her keys in the car and the driver's side window down. She reached into the car through the window and started blaring the horn to draw attention. The man sped off in the vehicle as she was still reaching into it. As he did, he dragged her a lengthy distance, running over her right foot, causing her to propel forward and slam face first onto the pavement of the Sunoco station. She testified that she sustained multiple sprains and severe bruising, a large cut on her foot, and burns down the right side of her body from her breast to her hip. She had a hematoma the size of a tennis ball on her left hip that did not heal for approximately three months. As a result of this incident, she has chronic back pain and is no longer able to wear high heels.

The Complainant had her iPad, cell phone, and handbag containing multiple credit cards in her vehicle. She immediately put a hold on all of her accounts within the first hour of the incident. One of her credit cards was used and another transaction was attempted, but did not go through because of the hold. She received a call that her handbag was at the Upper Darby Post Office approximately one week after the incident. Her identification cards and debit cards were no longer in her handbag.

Corporal Kenneth Wilson recovered the stolen vehicle within thirty minutes of the carjacking at 7:15 a.m., abandoned on Lenape Road in Philadelphia, approximately a quarter-mile from the Sunoco Gas Station.

Trooper Andrew Martin responded to the Sunoco Gas Station and obtained video footage of the incident from the station. A description of the suspect was generated based on the video: black, non-Hispanic male, approximately 6 feet, wearing a gray hoodie, blue jeans, and distinct sneakers with red trim, red tongue, and red laces. The suspect walked with a gait, i.e., he would swing his right foot as he walked with his left.

Trooper Martin was informed of an unauthorized use of the Complainant's credit card approximately thirty to forty-five minutes after the carjacking at a Citgo Gas Station at 4626 Lancaster Avenue. He provided the attendee with the credit card information and obtained a video of the person who attempted to use the card. The video was played for the jury. A man fitting the description of the assailant is seen at the pump where the credit card was used. He was driving a silver Hyundai

4

Santa Fe with a "distinctive rack on the top." Records showed that [the Petitioner] was the owner of that vehicle.

Trooper Michael Clarke was off-duty at the same Citgo Gas Station at 7:00 p.m. on April 19, 2013, the day after the incident, when he observed a man matching the description of the assailant, identified as [the Petitioner], in a silver Hyundai Santa Fe with a distinctive roof rack. He had seen the videos from the Sunoco Gas Station where the carjacking occurred and the Citgo Gas Station where the Complainant's credit card was used when he was on-duty earlier that day.

Trooper Clarke approached [the Petitioner]. When he did, [the Petitioner] stated he had "cards," "$10 to $20 to fill your tank up." Trooper Clarke told [the Petitioner] he was going to the ATM and contacted his supervisor. He observed [the Petitioner] deal with five or six other people and fill up their tanks with credit cards in exchange for cash as he waited for officers to arrive.

Trooper Christopher Holdeman responded to the Citgo based on the tip from Trooper Clarke. He surveilled the Hyundai Santa Fe for two minutes. The vehicle moved from the front of the gas station around the corner. The driver, later identified as [the Petitioner], exited the vehicle and started walking toward the convenience store at the station. [The Petitioner] was wearing the same black shoes with red shoelaces visible in the video of the carjacking.

Trooper Holdeman exited his vehicle and identified himself. [The Petitioner] turned and ran westbound through the parking lot of the gas station toward an alley. After a brief chase, [the Petitioner] was apprehended. A number of stolen identification cards and credit cards were recovered from [the Petitioner's] person. Complainant's identification cards and credit cards, including the TD Bank card used at Citgo Gas Station on April 18, 2013, were recovered in the center console of [the Petitioner's] Hyundai Santa Fe.

. . . .

John Milo, Forensic DNA Scientist for the Pennsylvania State Police, testified that the following swabs were taken from the vehicle: two swabs of the steering wheel, one swab of the rear-view mirror, one swab of the inside door latch, one swab of the door latch, one swab of the driver's seat adjustment bar, and one swab of the gear shifter. He was able to obtain visible DNA from the top half and bottom half of the steering wheel.

The DNA profile obtained from the swab of the top of the steering wheel was a mixture of three individuals. A major component consisted of two individuals. The DNA mixture profile was 480 trillion times more likely to occur under the scenario that it is a mixture of DNA originating from [the Petitioner], Complainant, and one random, unrelated person, as opposed to the scenario that it originated from a mixture of DNA from two random, unrelated people in the African American population; 200 quadrillion times more likely to occur under the scenario that it is a mixture of DNA originating from [the Petitioner], the Complainant, and one random, unrelated person as opposed to the scenario that it originated from a mixture of DNA from two random, unrelated people in the Caucasian population; and 26 quadrillion times more likely to occur under the scenario that it is a mixture of DNA originating from [the Petitioner], the Complainant, and one random, unrelated person as opposed to the scenario that it

originated from a mixture of DNA from two random, unrelated people in the Hispanic population.

Superior Court Opinion, 9/11/2017 at 1–5.

## ANALYSIS

### 1. Timeliness

Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). Here, the Court resentenced the Petitioner on April 24, 2018, and the Petitioner filed his PCRA petition twenty two days later on May 16, 2018. The instant PCRA petition is timely, and can be addressed on the merits.

### 2. Alibi Defense

The Petitioner's first claim on appeal is that trial counsel was ineffective for failing to investigate and call Penny Giggetts, the Petitioner's mother who was an alibi witness that would have testified that the Petitioner was asleep at Ms. Giggetts' house at the time of the robbery.

To raise a successful claim alleging ineffective assistance of counsel, the Petitioner must show "(1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that the petitioner was prejudiced by counsel's ineffectiveness." *Commonwealth v. Bracey*, 795 A.2d 935, 942 (Pa. 2001) (*quoting Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999).

The law provides that, counsel is presumed to be effective and the defendant bears the burden of establishing ineffectiveness. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). In order to establish that trial counsel's representation was deficient, the defendant must prove that the underlying claim has arguable merit and that counsel's conduct lacked any reasonable basis. *Commonwealth v. Durst*, 559 A.2d 504, 505 (Pa. 1989). Further, a defendant cannot be

6

granted any relief absent the additional showing that counsel's conduct adversely affected the outcome of the trial. In assessing a claim of ineffectiveness, when it is clear that defendant has not met the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003).

In addition to meeting the *Strickland/Peirce* requirements for ineffectiveness, to establish that counsel was ineffective for failing to call a witness, the Petitioner must demonstrate that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to deny him a fair trial. *Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007) (*citing Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (Pa. 2000)).

Furthermore, when a defendant makes a "knowing, voluntary, and intelligent decision concerning trial strategy" the petitioner waives the right to claim ineffective assistance of counsel based on that trial strategy. *Commonwealth v. Pander*, 100 A.3d 622, 642 (Pa. Super. 2014). Specifically, when a defendant is colloquied on the availability of alibi witnesses, and agrees with trial counsel's decision not to call the available alibi witnesses, trial counsel cannot be later found ineffective for failing to call the purported alibi witnesses. *Id.* at 643.

During initial remarks to the prospective jurors, the Court read Penny Giggetts' name as a potential witness listed by the defense. Notes of Testimony ("N.T."), 3/15/2016 at 20. Thereafter, upon the Commonwealth resting on their case in chief, the following exchange occurred:

7

THE COURT: Are you calling any witnesses?

DEFENSE COUNSEL: No, Your Honor.

THE COURT: Did you discuss that with your client?

DEFENSE COUNSEL: Yes.

THE COURT: Are you satisfied, Mr. Giggetts, with that?

THE PETITIONER: Yes, I am.

N.T., 3/17/2016 at 6.

The Court directly asked the Petitioner if he was satisfied with the decision to rest without calling any witnesses, and the Petitioner responded in the affirmative. Therefore, the Petitioner assented to counsel's strategy. *Pander*, 100 A.3d at 642.

Even if on could find that the Court's colloquy of the Petitioner was insufficient to waive his ineffective assistance of counsel claim, the Petitioner's claim fails to meet all of the requirements of *Washington*.

Although the Petitioner has satisfied the first four requirements: the witness existed, the witness was available to testify for the defense; counsel knew of the witness; and, the witness was willing to testify for the defense; he cannot satisfy the fifth requirement, that the absence of the witness's testimony was so prejudicial as to deny him a fair trial.

The affidavit provided by the Petitioner from Penny Giggetts states that the Petitioner was at home with her on the morning of April 18, 2013, and that Penny Giggetts knows this to be true because she does not sleep. The affidavit provides no further details.

The evidence presented by the Commonwealth was overwhelming. The Commonwealth presented video evidence of the Petitioner carjacking the victim. A second video depicts the Petitioner using the victim's credit card at a nearby gas station to purchase gas to fill a car

8

registered to the Petitioner. In both videos, the Petitioner is wearing a distinctive pair of shoes with red trim. The following day, the Petitioner is arrested wearing the same distinctive pair of shoes, at the same nearby gas station, standing next to his car, using stolen credit cards to fill up people's gas tanks in exchange for cash. Inside the Petitioner's vehicle, police discovered the victim's driver's license and bank cards. Furthermore, the Petitioner's DNA was found inside the victim's vehicle.

When considering the barebones affidavit provided by the Petitioner's mother against the totality of the overwhelming evidence presented by the Commonwealth, it is clear that the Petitioner was not prejudiced by the absence of the testimony proffered in the affidavit. Therefore, the Petitioner's claim has no merit.

### 3. DNA Expert Testimony

The Petitioner's second claim is that trial counsel was ineffective for failing to investigate the DNA evidence and to present expert testimony to rebut the Commonwealth's expert's conclusions. Additionally, Petitioner claims that the PCRA court erred in not conducting an evidentiary hearing to allow a DNA expert consulted by PCRA counsel to refute some of the expert's findings.

Trial counsel did not consult a DNA expert. While PCRA counsel did, she did not request the expert to prepare a formal report and indicated that she had a preliminary email from the DNA expert, Arthur Young, which she read into the court record. PCRA counsel stated that she would have the expert prepare a more comprehensive report if the court ordered an evidentiary hearing. Thereafter, PCRA counsel read the email from Mr. Young into the court record:

> I see an immediate problem, and that's that the report gives a statistical value that is "stacked," against the Defendant. Where it calculates the probability of victim

9

plus Defendant versus two unknowns on a mixture of at least three people? It's the victim's car, I presume, so her DNA should be a given, in which case, the formula is victim plus Defendant versus victim plus one unknown. **This would have dropped the number into the billions range.** I notice that the report is from 2014 which is interesting because I don't believe PSP -- I guess that is Pennsylvania State Police -- still has this practice today. I'll compare this against the testimony but at this point, it is not a question of whether he said anything wrong but how many wrong things he said. There is no clear third person, only a clear second person. At best, if you accept what was published in the report as true, then there may be a third person. The report says that based on the results at genetic loci TH01, D21, Penta E, D5, D16, VWA, D8, TPOX and FGA, which means that those are the loci that the calculations are based on. However, at Penta E, there's a 5 that does not belong to either the Defendant or the victim. At TH01, there is a minor 9.3, which may or may not have been discounted because it's a minor but that leaves a 7, and both the victim and the Defendant have a 7. That's like saying I found a black hair at the crime scene and the suspect has black hair even though the victim has black hair too. This same thing happened at two other points, TPOX and D8. At D21, there's a minor (31) that doesn't belong to either the victim or the Defendant. The report says that additional minor/less intense alleles were also present in certain genetic loci which means there are foreign alleles that don't belong to any of the references we have. The total list of foreign alleles come under five points; D3, Penta E, TH01, D21 and D7.

N.T., 8/7/2019 at 7–10 (emphasis added).

Notably, the initial findings of Mr. Young would have, at best, changed the statistical likelihood that it was the Petitioner's DNA in the victim's car from the quadrillions to the billions. The findings did not exclude the Petitioner as a contributor. The evidence would be of no moment since the DNA evidence was of minimal evidentiary value in light of the independent overwhelming evidence against the Petitioner.

Furthermore, the Petitioner was not entitled to an evidentiary hearing on the issue. The right to an evidentiary hearing in a PCRA is not absolute. *Commonwealth v. Grayson*, 212 A.3d 1047, 1054 (Pa. Super. 2019). The PCRA court may decline to hold an evidentiary hearing if the petitioner's claim is patently frivolous. *Id.* As previously established, the Petitioner's claim had no merit, therefore the PCRA court acted within its discretion to deny the Petitioner an evidentiary hearing.

10

## 4. Ineffective Assistance of PCRA Counsel

The Petitioner's third claim on appeal is that PCRA counsel was ineffective for failing to argue certain meritorious claims in the Amended Petition. Specifically: (1) trial counsel was ineffective for stipulating to lesser included offenses; (2) trial counsel was ineffective for failing to object to the admission of physical evidence, absent actual production (the shoes with the red trim); and (3) trial counsel was ineffective for failing to call any defense witnesses, which the Petitioner characterizes as presenting "no cogent defense." Statement of Matters Complained of on Appeal, 11/13/2019 at 3–5.

A claim of ineffective assistance of PCRA counsel raises the issue of a layered ineffective assistance of counsel claim.

> To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011). Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney. *Id.* at 1128; *see also Commonwealth v. Reyes*, 870 A.2d 888 (Pa. 2005); *Commonwealth v. McGill*, 832 A.2d 1014 (Pa. 2003).
>
> Layered claims of ineffectiveness "are not wholly distinct from the underlying claims[,]" because "proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.]" *Commonwealth v. Collins*, 888 A.2d 564, 584 (Saylor, J. concurring); *Reyes*, at 896 (proving three prong ineffectiveness test for trial counsel establishes arguable merit to appellate counsel's ineffectiveness). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010).

*Commonwealth v. Rykard*, 55 A.3d 1177, 1189–90 (Pa. Super. 2012).

According to the United States Supreme Court and a plurality of the Pennsylvania Supreme Court, appellate counsel is not constitutionally required to raise every possible claim

11

for relief. *Commonwealth v. Jones*, 815 A.2d 598, 613 (Pa. 2002) (citing *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983). Furthermore, "[c]ounsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgement, offered a greater prospect of securing relief." *Jones*, 815 A.2d at 618. The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (quoted with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

As a preliminary matter, PCRA counsel cannot be ineffective simply for failing to raise every issue that the Petitioner believes was meritorious. Before examining any issue it is crucial to remember that PCRA counsel is presumed to have been effective. Furthermore, by advancing only those claims that PCRA counsel believed were meritorious, PCRA counsel was demonstrating the hallmark of effective appellate advocacy. Consequently, the Petitioner's claim that PCRA counsel was ineffective is without merit.

A. Trial Counsel was Ineffective for Stipulating to Lesser Included Offenses and PCRA Counsel was Ineffective for Failure to Raise the Issue.

In the Petitioner's Response to the 907 Notice he claims that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness for entering into stipulations with the Commonwealth to the lesser included offenses of theft, receiving stolen property, theft from a motor vehicle, access device fraud, and other related minimal offenses. The Petitioner alleges,

12

that in exchange for the stipulations, trial counsel was required to withdraw all of the pre-trial motions filed by the defense.

The Petitioner misapprehends what occurred at the beginning of the trial. Trial counsel did not stipulate to any lesser included offenses, the Commonwealth simply chose not proceed on them. Furthermore, there is no evidence of record of a *quid pro quo* such that trial counsel agreed to withdraw pre-trial motions in exchange for the Commonwealth withdrawing the lesser included offenses. The only discussion which appears of record is that the Commonwealth indicated that it would not be seeking to admit certain evidence that the defendant wanted excluded so that the defense then withdrew its motions. N.T., 3/15/16 at 3–4. Therefore, trial counsel and PCRA counsel cannot be found ineffective.

B. Trial Counsel was Ineffective for Failing to Object to Physical Evidence and PCRA Counsel was Ineffective for Failure to Raise the Issue.

In the Petitioner's Response to the 907 Notice he claims that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness for failing to object to admission of physical evidence, absent actual production. Specifically:

> While the "Red Shoes" were seemingly a focal point in which the court determined that its reasoning for dismissing the petitioner's PCRA petition, because the defendant was allegedly arrested in a pair of Red Shoes like the ones that the perpetrator was seen whearing [sic] in the videos, the petitioner emphatically declares that he in fact was wearing the shoes that he got arrested in at the time of the trial and therefore, attorney Page was constitutionally ineffective for not objecting to the shoes not being produced, instead of simply being stated to have been in the possession of by the Commonwealth. An alleged "Smoking Gun" must be produced. Attorney Page knew this, but chose to laugh and joke with the prosecution and take her word when she said that she would bring them in if he wanted her to. As he did in fact ask where they were. . .

Petitioner's Statement of Matter's Complained of on Appeal, November 11, 2019 at 5.

Once again the Petitioner misapprehends what occurred. The Commonwealth never claimed to have possession of the red shoes. The jury was shown video from the incident and video from the arrest. The jury was able to make a comparison based on the videos and come to their own conclusion regarding the similarities with regard to the red shoes as well as other points of comparison between the person who committed the carjacking and the Petitioner. Therefore, trial counsel and PCRA counsel cannot be found ineffective.

C. Trial Counsel was Ineffective for Failing to Call Any Defense Witnesses and PCRA Counsel was Ineffective for Failing to Raise the Issue.

In the Petitioner's Response to the 907 Notice he claims that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness for not presenting a cogent defense. The Petitioner specified that a cogent defense would have entailed "appropriate cross-examination of DNA expert John A. Milo" and presenting counsel's "declared witnesses." Petitioner declares his witnesses as Penny Giggetts, the victim, Krystal Marshall and the Petitioner.

The Petitioner's claim is partially belied by the record. PCRA counsel advanced the claim regarding the DNA expert and Penny Giggetts and the PCRA court addressed them.

As to the victim; she was called as a witness and thoroughly cross-examined. The Petitioner gives no reason why the defense needed to call her.

As to the Petitioner being called as a witness, he voluntarily declined after being colloquied by the court. The decision whether or not to testify rests solely on the defendant. *Commonwealth v. Sandusky*, 203 A.3d 1033, 1076 (Pa. Super. 2019). Moreover, "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." *Commonwealth v. Rigg*, 84 A.3d

14

1080, 1086 (Pa. Super. 2014). The following colloquy transpired between the court and the

Petitioner:

> THE COURT: You need to understand that you have the absolute right to choose to testify or to choose not to testify, that although your attorney can advise you, in the end, you must make that decision alone. Do you understand that?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Did your attorney discuss the pros and cons, good points and bad points, about whether or not you should testify?
> THE DEFENDANT: Yes, he did, ma'am.
> THE COURT: Did you understand everything that he was saying to you?
> THE DEFENDANT: Yes, I did, ma'am.
> THE COURT: Did he offer you his advice on whether you should testify?
> THE DEFENDANT: Yes, he did, ma'am.
> THE COURT: Did you make your own decision, however, as to whether or not you should testify?
> THE DEFENDANT: Absolutely.
> THE COURT: What is that decision?
> THE DEFENDANT: That I will not.
> THE COURT: Did anyone promise you anything to get you not to testify?
> THE DEFENDANT: No, ma'am.
> THE COURT: Did anyone threaten you to get you not to testify?
> THE DEFENDANT: No, ma'am.
> THE COURT: Are you doing it of your own free will?
> THE DEFENDANT: For the most part.
> THE COURT: Is it your free choice? Now you know you can do whatever you want.
> THE DEFENDANT: Yes, ma'am.

N.T., 3/17/2016 at 4.

Finally, as to witness, Crystal Marshall, who was interviewed by a State Trooper and not

called for trial, the entirety of her statement is as follows:

> I was in the Sunoco. I came out and a car flew by. I thought it was being chased by police. It was driving at a high rate of speed. I saw a B/M from the side driving the car. He looked tall and had brown skin. The car was gray. Then I saw (sic) lying on the ground. I went back into the store to tell them to call police. I thought it was a hit and run accident. I then went to help Lisa.

Commonwealth Exhibit 1, at 27.

15

The Petitioner claims that this witness would not have been able to identify him and that the description she gave did not fit the Petitioner. While it is true that his witness gave a very general description based on her limited view inside a speeding car; "he looked tall and had brown skin," it is not true that her generic description did not fit the Petitioner. Marshall's testimony would not have inculpated nor exculpated the Petitioner. Therefore, her absence had no effect on the outcome of this trial. As such, trial counsel and PCRA counsel cannot be found ineffective.

## CONCLUSION

Based on the foregoing, the court's denial of Charles Giggetts' PCRA Petition should be affirmed.

By the Court:

_Rose Marie DeFino-Nastasi_

Rose Marie DeFino-Nastasi, J.

16

*Commonwealth v. Charles Giggetts*
CP-51-CR-0007804-2013
Opinion

### Proof of Service

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.CrimP. 114:

Petitioner:                    Charles Giggetts
                               DP0008
                               SCI - Albion
                               10745 Route 18
                               Albion, PA 16475-0001

    Type of Service: Certified mail

District Attorney:             Appeals Unit
                               Philadelphia District Attorney's Office
                               3 South Penn Square
                               Philadelphia, PA 19107

    Type of Service: Inter-Office mail

Date: 2/7/2020

Bryan Foster
Law Clerk to the
Honorable Rose Marie DeFino-Nastasi