J-S10020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE RYAN HILL | : | |
| | : | |
| Appellant | : | No. 554 MDA 2024 |

Appeal from the PCRA Order Entered March 20, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002742-2018

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 05, 2025**

Appellant, Jesse Ryan Hill, appeals from the March 20, 2024 order that dismissed his petition filed pursuant to the  Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.  We affirm.

A panel of this Court previously summarized the facts of this case as follows.

> On May 5, 2018, [Appellant's] fiancé, Miranda Stump ("Stump") told [Appellant] that the decedent [("Victim")] raped her.  The rape occurred in a breezeway on the 500 block of Franklin Street[, Reading, Pennsylvania].  Neither Stump nor [Appellant] knew [Victim's] actual name.   [Appellant] did [not] know [Victim] personally but knew who he was based on Stump's description of him as "the Spanish male who sits on the step down [on] Franklin Street."  Stump was addicted to heroin at the time and did not tell law enforcement she was raped until a week after [Appellant's] arrest in this case on May 16, 2018.
>
> On May 9, 2018, shortly before [Appellant] stabbed [Victim], [Appellant] and Stump were at their apartment located on the 700 block of Franklin Street.  Stump again provided [Appellant] with  the  description  of  the  individual  who  raped  her  prior  to

their walk to Franklin Street. [Appellant] and Stump left their apartment so that [Appellant] could "have words" with [Victim]. Stump knew that when she and [Appellant] left the apartment there would be a confrontation between [Appellant] and [Victim]. Stump pointed out [Victim] to [Appellant] just prior to [Appellant] stabbing [Victim].

At approximately 9:30 p.m., [Victim] and a black male were on the steps outside of [a building along the 500 block of] Franklin Street[.] Neither [Victim] nor the black male were in possession of weapons of any kind. While [Victim] was seated on the steps, [Appellant] approached him and stabbed him in the chest. [Victim] and the black male then chased after [Appellant] towards 6th Street. [Appellant] called for Stump to come with him as she was hiding behind a tree across the street. After failing to catch up to [Appellant], [Victim] and the black male returned to [] Franklin Street. As they were returning, [Victim] was bleeding heavily and had to be helped to the stairs. [Victim] stated that he was going to die. The black male called an ambulance which arrived quickly to the scene. Law enforcement officers also arrived and identified [Victim along] Franklin Street with a critical stab wound to his chest. [Victim] was bleeding and there was a large pool of blood. [Victim] died from the stab wound.

After [Appellant] lunged at and stabbed [Victim, Appellant] and Stump ran directly back to their apartment on the 700 block of Franklin Street. They were afraid that [Victim] and the black male were going to attack them. While at their apartment, [Appellant] told Stump that he had killed [Victim] by stabbing him with a knife. [Appellant] also shaved his face and head. According to Stump, [Appellant] used a metallic red switch blade knife to kill [Victim].

On the day of the assault, Criminal Investigator Ryan Scrampsie . . . of the Reading Police Department responded to [the 500 block of] Franklin Street [where the stabbing occurred]. While on scene, [Investigator] Scrampsie walked towards the 600 block of Franklin Street and located a knife in a storm drain. After stabbing [Victim, Appellant] was observed on video running [toward] the 600 block of Franklin Street [to avoid Victim's pursuit]. He was also observed standing on the corner of 100 South 6th Street with Stump prior to the stabbing.

[Appellant] and Stump were both detained and interviewed by law enforcement on May 16, 2018. During the interview, [Appellant] admitted that he stabbed [Victim]. He also stated that he shaved his head to change his appearance after the stabbing. [Appellant] initially stated that he believed [Victim] had a weapon on him and was defending himself but then changed his story saying that he "freaked out" and "snapped" and that he "hit the guy with it and ran." [Appellant] stated that the knife used to stab [Victim] was orange and he discarded it in the weeds along the train tracks by his building. The knife [used to stab Victim was never] located.

On the same day as the interviews of [Appellant] and Stump, a search warrant was executed on [Appellant's] apartment on the 700 block of Franklin Street. The apartment consisted of one room. A knife was discovered inside of that room between the wall and a mattress. Two additional knives were located inside of a pink tote in the room. Another knife with a black and yellow handle was located around the second doorway.

After [Appellant] was arrested, Stump went to visit him in prison. While she was there, [Appellant] told Stump that she should say that [Victim] was in possession of a firearm when the stabbing occurred. Also, on May 14, 2019, while [Appellant] was incarcerated in Berks County Prison, [Appellant] was involved in a telephone call which resulted in the filing of an additional criminal complaint against [Appellant] for criminal attempt to commit solicitation of witness intimidation.

Procedurally, a jury convicted Appellant on July 17, 2019, of first-degree murder, [possessing instruments of a crime ("PIC")], and related offenses. The court sentenced Appellant on August 5, 2019, to life imprisonment for murder and a consecutive [two and one-half] to [five] years' imprisonment for PIC.

*Commonwealth v. Hill*, 2020 WL 6743143, *1-*2 (Pa. Super. 2020) (non-precedential decision). This Court affirmed Appellant's judgment of sentence on November 17, 2020. *Id*. Our Supreme Court denied Appellant's petition for allowance of appeal on June 2, 2021. *See Commonwealth v. Hill*, 255 A.3d 1252 (Pa. 2021).

- 3 -

On October 25, 2022, Appellant filed a counseled PCRA petition in which he argued that his trial counsel was ineffective.[1] On October 5, 2023, the PCRA court convened a hearing on Appellant's petition during which Appellant's trial counsel, Micheal Cammarano, Jr., Esquire, testified. Ultimately, on March 20, 2024, the PCRA court dismissed Appellant's petition. This timely appeal followed.

---

[1] It is well-settled that a PCRA petition must be filed within one year of the date the judgment becomes final. **See** 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). In general, a litigant only has 90 days after the Pennsylvania Supreme Court denies *allocatur* to file a petition for writ of *certiorari* in the United States Supreme Court. **See** U.S. Sup. Ct. R. 13 ("Unless otherwise provided by law, a petition for a writ of *certiorari* to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). On March 19, 2020, however, the United States Supreme Court extended the time for filing a petition for writ of *certiorari* from 90 days to 150 days due to the COVID-19 pandemic. **See** U.S. Sup. Ct. Misc. Order 589 (Mar. 19, 2020). Then, on July 19, 2021, the United States Supreme Court continued the extended deadline to file a petition for writ of *certiorari* but only for "order[s] denying discretionary review . . . issued prior to July 19, 2021." **See** U.S. Sup. Ct. Misc. Order 594 (Jul. 19, 2021) ("[I]n any case in which the relevant lower court judgment . . . was issued prior to July 19, 2021, the deadline to file a petition for a writ of *certiorari* remains extended to 150 days from the date of that judgment or order. In any case in which the relevant lower court judgment . . . was issued on or after July 19, 2021, the deadline to file a petition for a writ of *certiorari* is as provided by Rule 13."). Here, our Supreme Court denied Appellant's petition for allowance of appeal on June 2, 2021. Hence, according to U.S. Sup. Ct. Misc. Order 594, Appellant needed to file his PCRA petition on or before November 1, 2022. Appellant filed his PCRA petition on October 25, 2022. In light of U.S. Sup. Ct. Misc. Order 594, we deem Appellant's petition to be timely filed.

Appellant raises the following issues for our consideration.

1. Did the PCRA court err in ruling that trial counsel's failure to preserve instructions as to imperfect self-defense was not ineffective assistance of counsel, where this was the linchpin of [Appellant's] defense?

2. Did the PCRA court err[] in finding that trial counsel was not ineffective for withdrawing an objection when the case agent opined there was no evidence of rape which Appellant stated in his police statement, and which impugned Appellant's credibility and undercut the defense?

Appellant's Brief at 2 (unnecessary capitalization omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed effective, and [the appellant] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (citation omitted). To prevail on an ineffectiveness claim, an appellant must establish:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

- 5 -

*Commonwealth v. Lesko*, 15 A.3d 345, 373 (Pa. 2011) (citation omitted).

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003).

In his first issue, Appellant claims that Attorney Cammarano was ineffective in failing to object to the trial court's omission of a voluntary manslaughter jury instruction. More specifically, Appellant avers that, while Attorney Cammarano presented evidence and argued that Appellant acted in both imperfect and perfect self-defense at trial, the trial court decided a "voluntary manslaughter jury instruction was unwarranted based on the

evidence presented." ***Hill***, 2020 WL 6743143 at *8. Thus, when the trial court issued its jury charge, it omitted the voluntary manslaughter jury instruction. Thereafter, Appellant challenged this aspect of the trial court's jury charge in the context of his direct appeal. Because Attorney Cammarano did not object to the trial court's omission, we said on appeal that Appellant failed to preserve his challenge to the trial court's jury instruction. ***See id.*** (holding that because "Appellant did not lodge an objection to the court's omission of the voluntary manslaughter jury instruction," he did not "preserve his claim of error for appellate review"). Appellant, therefore, argues that Attorney Cammarano's failure constitutes ineffective assistance. Appellant's claim lacks merit.

The Pennsylvania Crimes Code defines voluntary manslaughter as follows:

> **(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
>> (1) the individual killed; or
>>
>> (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
>
> **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503.[2]  Our Supreme Court previously outlined the parameters

of Section 2503(b), otherwise known as "imperfect self-defense," as follows:

> [A] self-defense claim is imperfect in only one respect - an
> unreasonable rather than a reasonable belief that deadly force
> was required to save the actor's life.  All other principles of
> justification under 18 Pa.C.S.[A.] § 505 must [still be met in
> order to establish imperfect self-defense.]

***Commonwealth v. Bracey***, 795 A.2d 935, 947 (Pa. 2001) (citation omitted);

***see also*** 18 Pa.C.S.A. § 505(b).[3]  Thus, to establish imperfect self-defense

---

[2] In Appellant's PCRA petition, he claimed that trial counsel was ineffective because he failed to preserve his objection to the trial court's refusal to give an instruction under Section 2503(a), *i.e.*, "heat of passion," and Section 2503(b), *i.e.*, "imperfect self-defense."  Appellant's brief omits any discussion of a claim alleging that the trial court refused to issue the "heat of passion" jury instruction under Section 2503(a).  Instead, Appellant briefly references this claim only in his reply brief.  ***See*** Appellant's Reply Brief at 1-2.  It is well-settled that a "claim is waived if it is raised for the first time in a reply brief." ***Commonwealth v. Collins***, 957 A.2d 237, 259 (Pa. 2008); ***see also Commonwealth v. Fahy***, 737 A.2d 214, 219 n.8 (Pa. 1999) (explaining that "an appellant is prohibited from raising new issues in a reply brief" and that "a reply brief cannot be a vehicle to argue issues [omitted from, or raised only through inadequate development within, an opening] brief.").  Because Appellant failed to develop or even mention this issue in his opening appellate brief and, instead, briefly mentioned this issue exclusively within his reply brief, it is waived.

[3] 18 Pa.C.S.A. § 505 sets forth the principles of the justifiable use of force in self-defense.  With respect to the use of deadly force in self-defense, Section 505 provides:

> (2) The use of deadly force is not justifiable under this section
> unless the actor believes that such force is necessary to protect
> himself against death, serious bodily injury, kidnapping or
> sexual intercourse compelled by force or threat; nor is it
> justifiable if:

*(Footnote Continued Next Page)*

and, in turn, to secure a jury instruction on this defense, "the remaining principles in Section 505 [must] still [] be satisfied, including that the defendant was not the aggressor in the encounter and did not violate a duty to retreat safely." ***Commonwealth v. Rivera***, 108 A.3d 779, 787 (Pa. 2014).

Herein, the evidence presented at trial arguably satisfied the first element of an imperfect self-defense claim, *i.e.*, that Appellant's "belief that he was in imminent danger of death or serious bodily injury requiring the use of force against [Victim] was unreasonable." PCRA Court Opinion, 5/23/24, at 9. Indeed, while there was testimony that Victim "lean[ed] forward" and put "his hand near his waist," there was no evidence that Victim possessed a weapon when he encountered Appellant or that Victim "took any action against [Appellant] that would have justified the use of any force, deadly or otherwise." ***Id.*** at 8 (explaining that there were no weapons found on Victim, no weapons found in the area where Victim was sitting, and no testimony that anyone saw Victim with a weapon). The Commonwealth, however,

---

> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
>
> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take[.]

18 Pa.C.S.A. § 505(b).

demonstrated that Appellant, not Victim, was the aggressor in the situation. In particular, Stump testified that, on the night of the murder, the pair left the apartment because "[Appellant] wanted to have words with [Victim]," and that Appellant confronted Victim "aggressively" by "lung[ing] toward [the Victim]." N.T. Trial, 7/15/19-7/17/19, at 99-100. In this same vein, the evidence established that, after Victim put his hands near his waist, Appellant did not retreat and, instead, stabbed Victim. *See* PCRA Court Opinion, 5/23/24, at 9 (explaining that Appellant "had a duty to retreat but failed to do so."). Because Appellant "did not establish that he acted in . . . imperfect self-defense," he was not entitled to a jury instruction on this basis. *Id.* Hence, Appellant's claim lacks merit.

In his second issue, Appellant challenges Attorney Cammarano's decision to withdraw his objection to Criminal Investigator Eric Sweitzer's testimony that "he found no evidence that Miranda Stump [was] raped." Appellant's Brief at 18. Per Appellant, this testimony "reflected that [Appellant] was lying about the rape, which undercut his credibility" as well as Appellant's claim that he acted in self-defense. *Id.* Appellant's claim fails.

At the October 5, 2023 PCRA hearing, Attorney Cammarano testified regarding his trial strategy. More specifically, Attorney Cammarano explained that, as Appellant indicated in his statement to the police, the sole reason that Appellant confronted Victim was because of Stump's allegation that Victim raped her. N.T. Hearing, 10/5/23, at 20-21. Hence, in Attorney Cammarano's view, whether or not Stump falsely accused Victim was of no consequence

because "[w]hat was relevant was that [Appellant] **thought** the rape had occurred." PCRA Court Opinion, 5/23/24, at 12 (emphasis added); *see also* N.T. Hearing, 10/5/23, at 19 (Attorney Cammarano stating that Stump "could have lied to [Appellant] about being raped" but that did not "change the fact [that] in [Appellant's] mind . . . he believed [it] happened."). Because Attorney Cammarano believed that CI Sweitzer's testimony did not "effect[] his defense [theory] but rather provided a reason for why [Appellant] confronted [Victim]," Attorney Cammarano made a strategic decision to withdraw his objection to CI Sweitzer's testimony. *Id.* at 19-20 (Attorney Cammarano stating that "sometimes there [are] so many battles that you can have . . . during trial" and "this felt like a small one that . . . did [not] seem worth it"). Under the circumstances, Appellant has not established that a vigorous objection to the testimony of CI Sweitzer would materially have enhanced his prospects for success at trial, nor has he shown that no competent lawyer would have selected the strategy pursued by Attorney Cammarano. Thus, we agree with the PCRA court that Attorney Cammarano possessed a reasonable basis for his actions and that Appellant's claim necessarily fails. *See* PCRA Court Opinion, 5/23/24, at 12.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>05/05/2025</u>